[No. 2472.  Decided February 11, 1897.]

ISAAC COOPER et al., *Respondents*, v. CITY OF SEATTLE, *Appellant*.

STREET IMPROVEMENTS — LIABILITY OF CITY FOR NEGLIGENCE — INDE-
PENDENT CONTRACTOR.

Where under its charter a city is given the management, control and superintendence of public streets and of the making of improvements therein, and the management, building and repairing of all sewers, whether such improvements are made by contractors or by the city directly; and, under a contract for the improvement of a street, the city retains the right to direct or control the work and to discharge all persons employed thereon who should neglect or refuse to obey the city engineer, the contractor is not an independent one, within the meaning of the rule which exempts a city from liability for an injury caused by negligence in the prosecution of the work, but the city stands in the position of *respondeat superior*.

Appeal from Superior Court, King County.—Hon. RICHARD OSBORN, Judge.   Affirmed.

*John K. Brown*, and *F. B. Tipton*, for appellant.
*Blaine & De Vries*, for respondents.

The opinion of the court was delivered by

GORDON, J.—The appellant entered into a contract with Spurr & Wilmot to improve and pave a certain street in the city of Seattle. While engaged in that work the contractors excavated under a certain water main, removed the earth from around it, and thereafter filled up the excavation. As a result of such excavation and removal of the earth which supported it, the main burst, causing water therefrom to flow into the cellar of respondents, damaging their goods. This action was brought to recover from the city the damages so sustained. There was a verdict and judgment for the respondents, from which the city has appealed.

The only question which we need to consider is whether Spurr & Wilmot were independent contractors for whose negligence the appellant is responsible. The charter of the city of Seattle, amended March 8, 1892, and in force at the time when the contract in question was entered into, conferred upon the board of public works the management and control of public streets and alleys of the city; also the superintendence of streets, making the improvements therein, and the management, building and repairing of all sewers and connections therewith. It further provides that such improvements as are made by contractors shall be made under the *management* of the board of public works. The contract and specifications in the case under consideration contained numerous provisions requiring the material used for the work to be of the kind and dimensions designated by the city engineer; also that the general plan should be subject to " such

changes or additional plans or instructions as the city engineer might require,   .   .   .   before the beginning or during the progress of the work." The contract also contained the following stipulations :

"Plans and superintendence. This improvement shall be under the superintendence of the city engineer and any orders or directions given by him or his duly appointed representative shall be respected and immediately and strictly obeyed by the contractor or any overseer in charge of the work. It is hereby understood that wherever the term ' engineer ' or city engineer are mentioned in these specifications, it shall mean himself or any representative duly appointed by him."

"General stipulations. Whenever the contractor is not present on the work, orders will be given to the superintendent or overseer who may have immediate charge thereof, and shall by them be received and strictly obeyed. And if any person employed on the work shall refuse or neglect to obey the directions of the city engineer or board of public works in anything relating to the work, or shall appear to be incompetent, disorderly or unfaithful, he shall upon the requisition of the engineer, be at once discharged, and not again employed upon any part of the work."

There was also a provision requiring the contractors to save the city harmless from suits brought against it by reason of the negligent performance of the work.

We think that, under the provisions of this contract, which practically placed the work under the control, direction and management of its engineer, Spurr & Wilmot did not become independent contractors within the meaning of the rule which exempts a city or other employer from liability for an injury caused by negligence in the prosecution of the work. Under the contract the city retained the right to direct

and control the work and to discharge all persons employed thereon who should neglect or refuse to obey its engineer in charge.

The cases of *Pack v. Mayor*, 8 N. Y. 222; *Blake v. Ferris*, 5 N. Y. 48 (55 Am. Dec. 304), and the other cases cited by counsel, did not contain provisions of the character noticed in the present contract, and we think those cases do not conflict with the conclusion at which we have arrived in the present case. See, also, *Seattle v. Buzby*, 2 Wash. T. 25 (3 Pac. 180); *Fink v. City of St. Louis*, 71 Mo. 52; *City of Cincinnati v. Stone*, 5 Ohio St. 38.

Affirmed.

SCOTT, C. J., and DUNBAR, ANDERS and REAVIS, JJ., concur.