[No. 10561.    Department Two.    October 29, 1913.]

NORTH BEND LUMBER COMPANY, *Respondent*, v. CHICAGO, MILWAUKEE & PUGET SOUND RAILWAY COMPANY *et al.*, *Appellants*.[1]

MASTER AND SERVANT—INJURIES TO THIRD PERSONS—RELATION— SERVANT OR INDEPENDENT CONTRACTOR. Parties agreeing to clear a railroad right of way are not independent contractors, where under their contract, in the usual form for railroad construction work, they were obligated to prosecute the work with such means as the company's representative might require, were subject at all times to his direction, his decision was final upon all matters in dispute, and he could cancel the contract and control the time of the work and the number of employees, leaving the contractors with no independent judgment as to the means or manner of performing the work.

APPEAL—REVIEW—HARMLESS ERROR—INSTRUCTIONS. An erroneous instruction making a railroad company liable for the negligent acts

[1]Reported in 135 Pac. 1017.

of certain persons as independent contractors, is harmless, where it appears that they were servants of the company and the company was liable for their negligent acts.

APPEAL—REVIEW—VERDICT. A verdict supported by substantive evidence cannot be set aside on appeal merely because against the weight of the evidence.

RAILROADS—FIRES—CAUSE—EVIDENCE—QUESTION FOR JURY. In an action for the destruction of timber by a railroad fire, alleged to have spread to the plaintiff's premises, whether the loss was caused by the railroad fire or by an independent fire in the neighborhood, is a question for the jury, where there was evidence to the effect that the several fires all had a common origin, viz. the fire started on the railroad right of way by the company's servants.

RAILROADS—FIRES—NEGLIGENCE—VIOLATION OF STATUTE—PRESUMP-TIONS. Where a complaint charged a railroad company with setting a fire on its right of way without a permit and in violation of a statute, after the fire warden had warned it not to do so, it is proper to instruct that the setting of such a fire without a permit and in violation of the statute was *prima facie* evidence of negligence.

TRIAL—INSTRUCTIONS—REQUESTS. It is not error to refuse to give an instruction where, from other instructions covering the subject, the jury clearly could not have been misled.

RAILROADS—FIRES—NEGLIGENCE—EVIDENCE—ADMISSIBILITY. In an action for setting out a fire on a railroad right to way at a time when the act was of such a dangerous character as to render the company liable even if it had been done by independent contractors instead of servants of the company, evidence of a conversation between the fire warden and defendant's engineer in charge of the work, with reference to the setting out of the fires, is admissible.

Appeal from a judgment of the superior court for King county, Albertson, J., entered February 3, 1912, upon the verdict of a jury rendered in favor of the plaintiff, for property injured and destroyed by fire. Affirmed.

*Geo. W. Korte* (*H. H. Field,* of counsel), for appellants.

*Kerr & McCord* and *Alexander & Bundy,* for respondent.

FULLERTON, J.—In the year 1910, the appellant, Chicago, Milwaukee and Puget Sound Railway Company constructed a branch line of railway between Moncton, in King county, and the city of Everett. The work was under the control of the appellant H. C. Henry, and he employed one Carlson

and certain others to do the clearing and grading for the railway track over a portion of the way, the particular portion lying between points technically designated as stations 122 and 171. Carlson entered upon the performance of the work, and during the progress thereof, a fire broke out in the vicinity of his place of work which spread over adjoining lands to lands of the respondent, North Bend Lumber Company, on which there were bodies of merchantable timber, portions of which the fire damaged and portions of which it destroyed. This action was thereupon begun against the appellants to recover in damages for the value of the timber injured and destroyed. A trial had before the court and a jury resulted in a verdict and judgment for the respondent in the sum of $5,602. This appeal is from the judgment so entered.

In the complaint, it is alleged that, in the month of August, 1910, the appellant railway company was engaged in constructing the line of railway before mentioned; that the appellant Henry was the agent of the railway company for the purpose of doing construction work; that the respondent was the owner of timber lands adjacent to the railway company's right of way; that immediately adjacent to such right of way and abutting thereon, was an old timber slashing covered with dead tree tops, timber, ferns, and other combustible material, which, during the summer months of the year, became highly inflammable; that the summer of 1910 was unusually dry, and that for two months immediately prior to August 24, little or no rain had fallen; that the appellants employed Carlson to clear the right of way at this point, and required of him that the clearing should be done in the summer of 1910, by cutting the timber on the right of way, piling it up with tree tops, brush and dead timber, and burning it on the right of way; that, at the time the appellants employed Carlson to clear and grade the right of way, as aforesaid, they well knew that the setting of fires along the right of way during the summer months was an

operation inherently and intrinsically dangerous in itself, and would of necessity or probably result in communicating fire to the adjacent woods and timber; that Carlson, in prosecuting his work of clearing the right of way, cut down timber and collected large quantities of logs, tree tops, and brush in piles on and adjacent to the right of way, and set fire to the same; that such clearing and burning continued from time to time during the months of July and August, 1910; that Carlson was warned by the state and county fire wardens not to burn the clearings from the right of way; that notwithstanding such warnings, and the inherent and probable danger from such a proceeding, Carlson, on August 24, 1910, with the knowledge and consent of the appellants, set fire to a large pile of logs, brush, and tree tops, situated partly on and partly off the right of way, which fire "burned so fiercely as to become impossible to control and was communicated to the adjacent woods, . . . and reached over and upon the lands of respondent, and burned and destroyed a great quantity of timber, to the respondent's damage" in a large sum of money.

The appellants made a joint answer to the complaint, in which they admitted that Henry was the agent of the railway company for the purpose of doing construction work; that Carlson was employed to clear the right of way, and that in prosecuting the work he cut down timber which he collected on the right of way and burned, and that the summer of 1910 was unusually dry, and that little or no rain had fallen for two months preceding August 24, 1910, but denied that any clearing or burning was done in the month of July or August, 1910, and denied that any fire was set by Carlson for the purpose of clearing on August 24, 1910, or for any purpose, and denied that any fire set out by Carlson was communicated to the appellants' land and timber. As a separate defense, they pleaded that appellant Henry, as agent of the railway company, entered into a written agreement with Carlson and others for doing the work of clearing and grading described

in the complaint, by the terms of which agreement Carlson and his associates became and were independent contractors in the performance of the work, and if any injury or damage to the lands and timber of the respondent was caused by any fire set out by Carlson or his associates, agents, servants or employees, in performing the work provided for in the agreement, the appellants are in nowise liable or responsible therefor.

The associates of Carlson mentioned in the answer were ten persons who joined with him in the execution of the contract referred to therein. They seem to have had no further connection with the matter. So far as the record discloses, Carlson at all times acted as the responsible head of the work, and was named in the complaint as a party defendant, although it seems was not served with process. The contract referred to is not set out in the answer; nothing more being stated than its nature and purported effect. A copy of it, however, was introduced into the record. It contains 11 pages of closely printed matter, divided into 117 paragraphs or sections, and seems to be a general form prepared to meet the exigencies that may arise in railroad construction generally, as many of its provisions have no application to work such as was contracted for here. We shall not, therefore, set out the contract in full, but will notice only such parts of it as seem to us material. The contract runs between appellant H. C. Henry, on the one part, and Gabriel Carlson and ten others on the other part, and provides that Henry shall be thereafter called the "First Party," and the parties of the second part the "Contractor." Paragraphs 1, 2, 3, 6, 7, 8, 9, 10, 12, 30, and 44, read as follows:

"(1) It is mutually understood that the expressions used herein, 'Railway,' refers to the Chicago, Milwaukee and Puget Sound Railway Company; 'Chief Engineer,' to the Railway's Chief Engineer; and 'Engineer,' to the Chief Engineer's authorized assistants.

"(2) In consideration of the payments, covenants and agreements of the first party, hereinafter contained, the Con-

tractor hereby covenants and agrees to execute, construct and finish in every respect in the most substantial and workman-like manner, all the work hereinafter specified for which prices are stated, including such other and extra work appurtenant thereto as may be required by the Chief Engineer, or by the first party, comprising clearing and grading located from where the division of material will come about station 122 to station 171, Everett Branch.

"(3)    The contractor agrees to commence the work within ten days from the date hereof, and to prosecute the work with such forces and means as will, in the opinion of the Chief Engineer, or of the First Party, insure the completion thereof Sept. 1, 1910; to be subject at all times during the progress of said work to the direction of the Chief Engineer, or the first party, as to the mode of doing the same; to prosecute said work at such times in such manner, and at such particular points as the Chief Engineer, or the First Party, may direct; not to employ thereon any person, either as sub-contractor, overseer or laborer, who has been dismissed from other work for bad workmanship, intemperance or disorderly conduct, and will dismiss from said work any and every person who is, in the opinion of the Chief Engineer, or First Party, disorderly, intemperate, quarrelsome, unfaithful or unskillful; and will not bring, or permit to be brought, on or about the work, spirituous liquors.

"(6)    The contractor agrees that he will, and he does hereby, assume all risks, loss and damage to all his property, and to the property of his sub-contractors and his and their employes, agents and servants howsoever caused; and also all risks and damage to himself, his sub-contractors, and his and their employes, agents and servants, if and while said property or said persons are carried free of charge on or over any of the lines of railroad of the Railway Company; and he also agrees that he will hold the Railway Company, and the First Party free and harmless from all damages and costs arising from or growing out of any accident or casualty to any person or persons while such person or persons are employed by him in constructing the work aforesaid, or while such person or persons or their property are being carried free of charge under the provisions of this agreement, and from all damage, cost and expense growing out of or arising from any damage to property or injury to persons, which

shall be caused wholly or in part by his negligence or the negligence of his sub-contractors, agents or employes, or by his or their neglect or failure to observe and perform any of the promises, requirements or conditions of this agreement; and if suit shall be brought against the First Party or the Railway Company to recover for any of the aforesaid damage or injury, the said contractor agrees to defend such suit at his own cost and expense, and to pay any judgment that may be recovered therein, and to save the Railway Company and the First Party free and harmless from any damage thereby.

"(7)   It is mutually agreed that in case any dispute or misunderstanding shall arise between the parties hereto, in relation to any of the covenants or stipulations contained in this agreement, or to their performance by either of said parties, the Chief Engineer of the Railway Company shall be and is hereby made an umpire to decide all questions arising from or growing out of this agreement. . . .

"(8)   It is mutually agreed that if, in the opinion of the Chief Engineer or the first party, the contractor shall have failed or refused to comply with any of the stipulations contained in this contract, to be by him performed, the First Party shall have the right to cancel this contract and declare the same void, and in such event the contractor shall have no claim whatever for damages, compensation or percentage retained as herein provided, either for material or work, but the First Party may and shall have the right to take possession of and hold said material and work absolutely, and shall be absolved as entirely and completely from this contract as if the same had never been made.

"(9)   It is mutually agreed that if the contractor shall at any time neglect or refuse to progress with the work as fast (in the opinion of the First Party, communicated to him in writing) as may be necessary for its completion by the time specified herein, then the first party may declare this contract abandoned, and the amount which shall have been retained at the time out of the monthly estimate, and which would have become due at the completion of this contract, shall be forfeited to the First Party; or the First Party may employ other parties to execute any part of the work, and charge the same to the contractor, and such costs shall be deducted from such retained percentage, or from any

payment that shall have become due on any former estimate, or that may become due on any subsequent estimates.

"(10)   It is mutually agreed that whenever, in the opinion of the Chief Engineer, it may be necessary to stop, either temporarily or permanently, any of the work, or to diminish the force employed thereon, the First Party shall have the right to do so, and the contractor shall have no claim for damages, but shall immediately stop the work or diminish the force, as said First Party may direct, and if when the same shall be resumed, the contractor shall be entitled to such extension of time for the completion thereof as the Chief Engineer may decide to be just and proper.   .   .   .

"(12)   The contractor shall comply with all laws of the State, or of the United States, and with all regulations relating to the setting out and protection of fires, and shall procure any permits required by such laws or regulations with reference to fires set out by him or his employes.   .   .   .

"(30) The First Party, in consideration of the fulfillment and performance of all the requirements and stipulations of this contract, and when the work shall have been, in the opinion of the Chief Engineer, completely performed, and the Chief Engineer shall have furnished to the First Party a certificate of the quantities of the various kinds of work done, which estimates shall be final and conclusive between the parties hereto, will pay to the contractor within 90 days after said certificate and estimate shall have been furnished by the Chief Engineer, the sum which may be due under this contract, agreeably to said estimates, at the following rates and prices:

| | |
|---|---|
| Solid Rock Excavation, Free Haul, 1000', per cu. yard | $.80 |
| Loose Rock Excavation, Free Haul, 1000', per cu. yd. | $.37½ |
| Hardpan Excavation, Free Haul, 1000', per cu. yd. | $.32 |
| Common Excavation, Free Haul, from 300' to 1000', per cu. yd. | $.24 |
| Common Excavation, Free Haul, 300' or less, per cu. yd. | $.20 |
| Any of the above materials, hauled on the Engineer's order, more than 1000' for each 100'additional, per cu. yd. | $.01 |

Clearing, per acre..................... $172.50
Grubbing, per station................     $.20
Logs skidded on right of way, per M.
    B. M. ...........................   $1.50
Cross ties made on right of way and piled,
    per tie .........................     $.20
Telg. poles made on R-W., per lin. ft. ....     $.03

"It is further agreed by the parties hereto that the second parties shall pay $1 each per month hospital fee for medical and hospital services, and turn the same over to Dr. J. C. Moore.

"(44)    The ground set apart for the railroad, including that in the vicinity of structures as required, shall be cleared to the boundary line of the company's lands, as the same shall be designated by the Engineer; and from the space required for the roadbed and its necessary slopes and side drains, and from the surface of borrow pits, all trees, stumps, and other vegetable matter, shall be cut off or grubbed up, and together with logs, brush, wood and fences shall be burned, removed from the ground, or usable portions be cut out, piled, and skidded, as the Engineer may direct so as not to injure the adjoining lands, nor to obstruct the lines for the fences of the railroad.

"When the embankment shall exceed two feet in height, it will only be required to cut the trees, stumps, and brush close to the ground; but when less than two feet in height, the trees, stumps, brush, and vegetable matter found within the slope-stakes must be grubbed up and removed beyond the limit of the embankment.

"The area within the limit of slope stakes, wherever grubbing shall have been done thereon, shall be estimated only upon cuts up to three feet in depth, under embankments of two feet or less in height, and upon uniform ditches whenever ordered by the Engineer."

In its instructions to the jury, the trial court charged in effect that Carlson and his associates were not, in virtue of the contract independent contractors, but were agents and servants of their co-contractor and his principal, the railway company, and that their co-contractor and the railway company were responsible for injuries caused by fire negligently suffered to escape by Carlson and his associates while in the

performance of the work of clearing the right of way.    The appellants excepted to the charge in the court below, and assign error upon it in this court.

In a number of cases this court has had before it the question whether or not a particular contract created the relation of principal and agent, or that of principal and independent contractor, and has offered definitions of the latter relation.    In *Engler v. Seattle*, 40 Wash. 72, 82 Pac. 136, this definition, taken from 16 Am. & Eng. Ency. Law (2d ed.), 187, 188, was given:

"Generally speaking, an independent contractor is one who, in rendering services, exercises an independent employment or occupation, and represents his employer only as to the results of his work, and not as to the means whereby it is to be accomplished.    The word 'results,' however, is used in this connection in the sense of a production or product of some sort, and not of a service.  .  .  A reservation by the employer of the right by himself or his agent to supervise the work for the purpose merely of determining whether it is being done in conformity to the contract does not affect the independence of the relation."

In *Larson v. American Bridge Co.*, 40 Wash. 224, 82 Pac. 294, Judge Hadley, speaking for the court, gave the following definition:

"The general test which determines the relation of independent contractor is that he shall exercise an independent employment, and represent his employer only as to the results of his work and not as to the means whereby it is to be accomplished.    The chief consideration is that the employer has no right of control as to the mode of doing the work; but a reservation by the employer of the right to supervise the work, for the purpose of merely determining whether it is being done in accordance with the contract, does not affect the independence of the relation."

In *Seattle Lighting Co. v. Hawley*, 54 Wash. 137, 103 Pac. 6, this definition of the relation was given:

"Where an individual or corporation contracts with another individual or corporation, exercising an independ-

ent employment, for the latter to do a work not in itself unlawful or attended by danger to others, such work to be done according to the contractor's own methods, and not subject to the employer's control or orders, except as to the results to be obtained, the employer is not liable for the wrongful or negligent acts of the contractor or of the contractor's servant."

In *Cary v. Sparkman & McLean Co.*, 62 Wash. 363, 113 Pac. 1093, the following was adopted from 2 Thompson on Negligence, 899:

"The general rule is, that one who has contracted with a competent and fit person, exercising an independent employment, to do a piece of work, not in itself unlawful or attended with danger to others, according to the contractor's own methods, and without his being subject to control, except as to the results of his work, will not be answerable for the wrongs of such contractor, his subcontractors, or his servants, committed in the prosecution of such work. An independent contractor, within the meaning of this rule, is one who renders service in the course of an occupation, representing the will of his employer only as to the result of his work, and not as to the means by which it is accomplished. The contractor must answer for his own wrongs and the wrongs committed in the course of his work by his servants."

In *Glover v. Richardson & Elmer Co.*, 64 Wash. 403, 116 Pac. 861, the following from 26 Cyc. 1546, was quoted:

"An independent contractor is one who, carrying on an independent business, contracts to do a piece of work according to his own methods, and without being subject to the control of his employer as to the means by which the result is to be accomplished, but only as to the result of the work. Generally the circumstances which go to show one to be an independent contractor, while separately they may not be conclusive, are the independent nature of his business, the existence of a contract for the performance of a specified piece of work, the agreement to pay a fixed price for the work, the employment of assistants by the employee who are under his control, the furnishing by him of the necessary materials, and his right to control the work while it is in progress except as to results."

In *Simila v. Northwestern Imp. Co.*, 73 Wash. 285, 131 Pac. 831, it was said:

"But it seems to us that the writing alone proves nothing. It is as consistent with the claim that the parties thereto sustain the relationship of master and servants as it is with the claim that the relationship is that of employer and independent contractor. It does no more than fix a price for the delivery of timbers at the mine. This is not sufficient to make the parties performing the work independent contractors. An independent contractor is one who renders service to another in the course of an independent occupation, representing the will of his employer only as to the result of his work, and not as to the means by which it is accomplished. If the employer may control the manner of doing the work, the relation of master and servant exists, no matter what terms may have been agreed upon as to the method of payment."

For other cases from this court touching upon the question, see, *Seattle v. Buzby*, 2 Wash. Ter. 25, 3 Pac. 180; *Cooper v. Seattle*, 16 Wash. 462, 47 Pac. 887, 58 Am. St. 46; *Ziebell v. Eclipse Lumber Co.*, 33 Wash. 591, 74 Pac. 680; *Miller v. Moran Bros. Co.*, 39 Wash. 631, 81 Pac. 1089, 1 L. R. A. (N. S.) 283; *Boyle v. Great Northern R. Co.*, 13 Wash. 383, 43 Pac. 344; *Erickson v. McNeeley & Co.*, 41 Wash. 509, 84 Pac. 3; *Barclay v. Puget Sound Lumber Co.*, 48 Wash. 241, 93 Pac. 430, 16 L. R. A. (N. S.) 140; *Kendall v. Johnson*, 51 Wash. 477, 99 Pac. 310; *Johnson v. Great Northern Lumber Co.*, 48 Wash. 325, 93 Pac. 516; *Campbell v. Jones*, 60 Wash. 265, 110 Pac. 1083; *James v. Pearson*, 64 Wash. 263, 116 Pac. 852; *Robinson v. Hill*, 60 Wash. 615, 111 Pac. 871; *Fehrenbacher v. Oakesdale Copper Min. Co.*, 65 Wash. 134, 117 Pac. 870; *Norwegian Danish Methodist Episcopal Church etc. v. Home Tel. Co.*, 66 Wash. 511, 119 Pac. 834; *Bowen v. Smyth*, 68 Wash. 513, 123 Pac. 1016.

The definitions quoted, while they differ in the form of statement of the rule, announce the same general principle.

A contractor, to be independent, must exercise an independent employment. He must be at liberty to perform the work he undertakes in his own way, at his own time within the limits of the time fixed in the contract, and by such means as to him seems most suitable. This does not mean, of course, that the contract itself may not prescribe that the work shall be performed in a particular manner, or that certain parts of it must be completed within a time less than the time fixed for the completion of the whole, or that certain means shall be employed in the accomplishment of the work, but it means that control over these matters must not be left to the whim or caprice of the employer, or his representative, to be exercised as the work progresses. If such right of control is retained, if the employer reserves to himself, or to his representative, the right to control at his pleasure the manner and means by which the work contracted for is to be accomplished, if the employer may stand by and tell the person undertaking the work, where, when and how it shall be performed, such person is the agent and servant of the employer, and not an independent contractor. The employer may reserve to himself the right to judge of the result of the work, and may exercise this right as to the character of the work or as to the character of the materials used in the work while the work progresses without destroying the independent nature of the contract, but matters of this kind mark the limits of his rights; they must relate to results, and not as to the means by which the results are accomplished.

Tested by the principle of the cases cited, the contract here in question would seem to make Carlson and his associates the agents and servants of the appellants, rather than independent contractors. By the terms of the contract, they are obligated to prosecute the work with such forces and means as will, in the opinion of the appellants' representative, enable them to complete the work within the time named in the writing; they are to be subject at all times

during the progress of the work to the direction of this representative as to the mode and manner of doing the same; they are required to prosecute the work in such manner and such points as he may direct; they shall not employ any person on the work who does not meet with his approval, and will dismiss any person to whom he objects. Should any dispute arise between the contractors and the representative concerning the work, the representative's decision thereon shall be final; the contract can be cancelled if, in the opinion of the representative, the contractors fail to comply with the stipulations of the contract, and no right of action for damages, compensation or percentage shall accrue to them because thereof; if the work does not progress as fast as the representative thinks it should progress, the contract may be declared abandoned, and other parties may be employed to do the work; the work may be stopped temporarily or permanently at any time, or the forces employed thereon may be diminished at the will of the representative, without any recourse on the part of the contractors; and, finally, it is provided that the contractors shall bear all losses and damages caused others by the negligent prosecution of the work, they shall make compliance with all the laws of the state relating to setting out fires and shall procure permits for that purpose if any be needed, and shall pay to a certain doctor $1 per month each as a hospital fee. These conditions leave the contractors with no independent judgment as to the means or manner of performing the work. Every step they may take, from the first to the last, is subject to the control of the representative of the appellant. The implied obligations arising out of the ordinary contract of employment are not more restrictive over the freedom of the person employed, and clearly they are wholly inconsistent with an independent employment. It is unnecessary to say, of course, that the clause of the contract making the contractors liable for losses caused by the negligent performance of the work is a mere *brutum fulmen* as to strangers to the contract, and,

perhaps, there is nothing intrinsically wrong in providing that the contractors shall exercise care with relation to fires, and shall maintain a hospital service. But the clauses are illustrative of the tenor of the contract—of its tendency to deal with matters not of concern to the employers if its employees are independent contractors.

It is claimed by the appellants that the contract under consideration by this court in *Kendall v. Johnson*, 51 Wash. 477, 99 Pac. 310, which was held to create the relation of independent contractor, was similar in its provisions to the contract here in question, and that the contract in the case of *Campbell v. Jones*, 60 Wash. 265, 110 Pac. 1083, where a similar holding was made, was the exact counterpart of such contract. The contract in the first case mentioned does not appear in our official report of the case. It will be found in the record, however, and is set forth in full in the report of the case found in 99 Pac. 310. A comparison of the terms of the contract will not be attempted here, but such a comparison will show, we think, that the contracts bear no very close relation to each other. Furthermore, we think we extended the rule to the limit in that case, and would rather retrench than to extend it further. The contract mentioned in the second case does not appear in the record in its entirety. The conclusion reached by the court was gathered from the pleadings and the concessions of counsel made with respect thereto in the course of the trial. Neither of the cases are authority for the contention that the present contract creates the relation between the parties thereto of principal and independent contractor. We conclude, therefore, that the court did not err in the instruction to which complaint is here made.

The court gave to the jury the following instruction:

"It being conceded that, under the contract executed by Carlson, he was required by the defendants to burn this right-of-way or a part of it in the course of the clearing, and in view of the reservations in the contract of the right of the de-

fendants to supervise the work, the reservations which I have read from the contract to the jury, and, in view of the admission of the pleadings that, in the summer months, the treetops and other wood products or vegetation along the line of this right-of-way are inflammable and combustible, and in view of the admission of the pleadings that there had been little or no rain along this right-of-way in the summer of 1910, the court will charge you, gentlemen, as a matter of law, that the defendants, the Railway Company and Mr. Henry, would be liable for any loss to the property of the plaintiff which was occasioned by the negligence of the Contractor Carlson, in burning this right-of-way, or any part of it, in the course of the clearing of the right-of-way."

This instruction was given on the theory that the work of clearing the right of way by burning was, under the circumstances, so far inherently and intrinsically dangerous that it would necessarily, or in all probability, result in an injury to a third person, and hence would render the principals liable, notwithstanding the contractor may have performed the work as an independent contractor. In view of the fact that we hold the contract existing between the appellants and Carlson to create the relation of principal and agent, rather than that of principal and independent contractor, the existence of the condition assumed is not material to the right of recovery, as the appellants would be liable for the negligent acts of Carlson in the performance of his work under the contract, regardless of the question whether or not the work was in itself inherently and intrinsically dangerous. In other words, we make the liability rest on the doctrine of *respondeat superior*, and not on an exception to the general rule of nonliability of a principal for the negligent acts of an independent contractor. It will be noticed that the court does not declare a liability on the part of the appellants. The rule stated is applicable only on the contingency that Carlson was negligent in the work of burning the debris while in the course of clearing the right of way. Since the appellants would be liable on another ground for the same negligent act,

the instruction, even if erroneous on the theory on which it is founded, is correct in its result, and hence is error without prejudice. It is not necessary therefore that we inquire into the correctness of the rule as stated.

The cause was tried in the court below on the theory, and in fact the court so charged the jury, that if the fire causing the losses escaped from a fire started on the right of way by employees of Carlson for purposes of their own, such, for instance, as a fire started by cooks for their own convenience in cooking meals, or heating coffee, or for like purposes, the appellants would not be liable for the losses so caused. Accepting this as a correct statement of a principle governing the right of recovery, the appellants contend that the court should have taken the case from the jury on their motion to that effect, for the reason, as they further contend, that there was no evidence in the record showing that the fire originated in any other manner than in a manner for which the rule stated would exempt them from liability. We cannot, however, accept this as a correct interpretation of the evidence. The record is long, and impossible of review within the limits of an opinion, but our examination of it convinces us that it contains substantive evidence from which the jury could well have found that the fire causing the losses originated from a fire set out by the order of Carlson for the purpose of clearing the right of way. This is sufficient to sustain the finding in this court. While a trial court may set aside the verdict of a jury and grant a new trial when the evidence is conflicting, if he feels that the jury has found against the preponderance of the evidence, no such power rests in this court. This court reviews this class of cases for errors of law only, and it is not an error of law for a jury to decide against the court's conception of the weight of the evidence.

The appellants introduced evidence tending to show that, at the time the fire was discovered by the fire warden, which escaped from the appellants' right of way, another fire was

discovered burning near the respondent's logging road which had an origin independent of the fire escaping from the right of way, and for which neither Carlson nor the appellants were responsible; that this fire spread in the direction of the respondent's timber and was in itself a sufficient cause for the burning of the timber, even had the fire from the right of way not escaped and spread thereto. Upon these facts it is argued:

"Whether the logging road fire was set or was not set by the act of respondent is immaterial in applying the rule of law which we claim must control this branch of our argument upon the undisputed fact of the existence and resulting operation of the logging road fire. With the record fact undisputed that the logging road fire existed, that it started through no act of appellants, that it rapidly spread to enormous proportions into the timber in question, and either united with or swallowed whole the fire claimed to have been set by Carlson, it is our contention that there is an utter failure of proof by respondent that the Carlson fire was the *causa sine qua non* or that it caused the damage represented by the verdict. The facts not being in dispute, the question was one for the court and not for the jury to decide for it is the rule of law that the proximate cause must be answered by proof made by plaintiff; if disputed, then it is for the jury, but if not, then the court cannot shift its duty upon the jury to decide the result of the facts.

"The rule of law which fits the foregoing undisputed facts is this: Where two independent efficient causes unite and produce injury to another, one of which is traceable to a responsible person whose negligence set it in motion, and the other cause is not traceable to any known responsible agent, each of which causes, however, without the concurrence of the other, would produce the same injury at the same time and to the same extent, no cause of action accrues to the injured person for the loss. Or, stated in another way: Where an injury accrues to a person by the concurrence of two causes, one traceable to another person under such circumstances as to render him liable, and the other not traceable to any responsible origin but of such efficient and superior force that it would have produced the injury regardless of the responsible cause, there is no legal liability, because no

damage can, in such event, be traced with reasonable certainty to the wrong-doer as a producing cause or a *causa sine qua non.*   Or, as stated by Shearman & Redfield, Neg., 4th Ed., Sec. 39, 'if the superior force would have produced the same damage, whether defendant had been negligent or not, his negligence is not deemed the cause of the injury.' "

Conceding the principle stated by appellants, we cannot concede its application.   Our reading of the evidence convinces us that there is a serious dispute whether there was any fire in this vicinity on the day in question other than the fire which escaped from the appellants' right of way.   Indeed it seems to us that the decided preponderance of the evidence is to the effect that the several fires described by the witnesses all had a common origin, namely, from the fire started by the order of Carlson on the right of way.   This being true, it was for the jury, and not the court, to determine whether there was a cause for the burning of respondent's timber for which the appellants were not responsible.   There was, therefore, no error in the failure of the court to take the cause from the jury on the ground here contended for.

The court charged the jury to the effect that,

"There is a statute of this state which provides that, if any person shall for any lawful purpose kindle fire upon his own land, he shall do it at such time and in such manner as to prevent it from spreading, and if he fails to do so, he shall be liable for all damage done by it, and that if Carlson violated this statute, such violation is *prima facie* evidence of negligence, and if the fire which caused such loss was occasioned through the violation by Carlson of the statute law of the state, the appellants are liable for the damage resulting from such violation."

It is contended that the giving of this instruction was reversible error, because there "is no allegation in the complaint upon which it can be based, and no evidence that the appellants violated the statute."   But as we have shown, the complaint alleged that Carlson had been denied a permit to burn by the fire warden and had been expressly warned by

him not to do so.   The evidence substantiated these allegations; at least, evidence was introduced to that effect.   If the instruction would have been error under the circumstances assumed by the appellants, we do not think it error in the light of the allegations the complaint actually contained. Clearly, the legal proposition stated by the court is correct. If a person in the employment of another violates a statute to the injury of a third person, such violation is *prima facie* evidence of negligence.

But it is said that, if the court properly gave the foregoing instruction, it was reversible error to refuse to give the appellants' requested instruction to the effect that it is unlawful under the laws of this state for any person to operate any spark emitting locomotive in the immediate vicinity of any forest slashing, chopping, woodland, or brush land during the months of June to October, inclusive, unless such locomotive is equipped with and uses a safe and suitable spark arrester; and that if the jury found from the evidence in this case that, on the day of the fire, the respondent operated such an engine, not so equipped on its logging road in the vicinity of the fire in question, and that the engine set fire near the logging road by emitting sparks which fire contributed to the losses of the respondent, no recovery could be had.   But while we think the record would justify this instruction, we cannot hold it reversible error not to give it, in the light of the instruction actually given, namely:

"Before the defendants [appellants] could be held liable for a fire started by Carlson in this case you must find that the fire was started in the course of the burning of the right-of-way for clearing purposes within the scope of the contract. It would not be sufficient for you to find that the fire was negligently started by Carlson in the clearing of this right-of-way, but before you could find for the plaintiff you must further be satisfied from the evidence that the fire so started was the cause of the loss complained of by the plaintiff; that it was negligently started, and that it was communicated to the property of the plaintiff, causing it to burn.

"As I have said, the law aims to be just and is always reasonable. There is nothing mysterious about the law, as seems to be imagined by a great many people. It is the application of common sense to the common experiences of life, and of course it would be unreasonable to hold these defendants liable for any fire which may have burned the property of the plaintiff unless that fire was caused by the negligence of the defendants themselves or their agents. So if you should believe from the evidence that the property of plaintiff, or part of it, was destroyed or damaged by fire, but that the fire that caused the loss was started in some way other than through the negligent act of Carlson in clearing the right-of-way by burning, then in no event could the plaintiff recover against these defendants. If, for instance, you should be satisfied from the evidence that the fire that caused this loss, if there was a fire, was communicated from a mill of the plaintiff, or from a locomotive that ran over a logging road of the plaintiff, whether negligently or otherwise, then the plaintiff could not recover against these defendants, because the defendants would not be responsible for any such act. . . .

"Of course if the jury should find from the evidence that other forest fires were burning at the time and that this particular property was burned because of the communication of such fire to it, why, the plaintiff could not recover. Plaintiff could only recover on account of a fire caused by the defendants or their agent."

Clearly the jury could not have been misled as to the particular question.

The remaining assignments based on the instructions of the court, and the refusal to give certain others, but reflect the theory of the appellants as to the proper construction of the contract, and are sufficiently answered by our conclusion upon that question.

Errors are assigned on the admission of certain evidence, but we think these require no extended discussion. The principal objection relates to a conversation between the appellants' engineer in charge and the fire warden concerning the burning of debris on the right of way. The respondent's complaint was based in part on the theory that the acts re-

quired of Carlson by the appellants in the performance of the work of clearing and grading the right of way was of such a dangerous character as to render the appellants liable, even were the contract between them such as to make Carlson an independent contractor. The evidence objected to was clearly admissible on this branch of the case.

The judgment is affirmed.

MOUNT, MORRIS, MAIN, and ELLIS, JJ., concur.