Main, J.
The purpose of this action was to recover damages for personal injuries. The defendants are the Grote-Rankin Company, a corporation, and one C. R. Whitney, who was in the employ of that company and was the active agent in producing the injury of which the plaintiff complains. The trial to the court and a jury resulted in a verdict against both defendants in the sum of $7,500. Each made a motion for judgment notwithstanding the verdict, and, in the alternative, for a new trial. These motions were over *159 ruled, and the defendants prosecute separate appeals from the judgment entered upon the verdict.
Grote-RanMn is a corporation operating a large retail furniture and house furnishing store in the city of Seattle, one line of its business being that of the sale of pipeless furnaces. On June 16, 1920, Whitney was employed by Grote-Rankin for the purpose of soliciting the sale of furnaces in the city of Seattle. At the time he was employed, he was informed that the store hours were from 8:45 o’clock a. m. to 5:15 o’clock p. m., and it is a reasonable inference from the evidence that during these hours he was to devote his entire time to the business of the company. After being employed, he entered upon the performance of his duties, going about the city soliciting prospective customers with the view of selling pipeless furnaces. To aid him in tMs work he made use of an automobile which he either owned or had exclusive control of. At the time of the employment, nothing was said about the method by which he should get about the city, and the officers of the company with whom he talked at the time gave no consideration to Ms method of transportation. It was immaterial to them by what means he got about. The thing they were interested in was results. As compensation Whitney was to receive the sum of forty dollars per week, and two per cent commission on sales. He did not have the power to finally close a contract with a purchaser, hut the latter was required to come to the store for that purpose and to arrange terms of credit if such were desired.
On the evening of July 27, 1920, at about seven o ’clock, he went in his automobile to the home of one C. F. Wagner, a prospective customer, for the purpose of presenting the merits of the pipeless furnace, and with the view to making a sale thereof. He called upon *160 Wagner a day or two before while the latter was at work in another part of the city, and was told by him that he conld be seen about the matter some evening. It- was in response to this suggestion that Whitney went to the home of Wagner at the time mentioned. When he arrived there he parked his car in front of the house occupied by the respondent, who was a neighbor of Wagner, the reason for this being the ungraded condition of the street. At the place where the ear was parked the street presented a considerable grade. Shortly after this, and while Whitney was at the Wagner home, the respondent drove up in a Ford and stopped a few feet to the rear and down the hill from Whitney’s car. When the latter returned to his automobile the respondent was in the act of putting a tire on the Ford truck. Whitney cranked his car, and then, as the evidence shows, got into it and caused it to back over and upon the hips of respondent. The latter, making an outcry, requested him to drive forward. The car was then advanced a few feet and again backed upon the respondent, pinning him between the two cars in such a manner that he received serious injuries. After the accident happened, Whitney was lying on the ground at the side of his car unconscious. He says he remembers nothing after having cranked the car. He had a lump on the left side of his head just above the ear, which he believes was caused by being struck by the crank. The action, as above indicated, was brought against both Whitney and the Grote-Rankin Company, by which he was employed.
We will first consider the points made by GroteRankin in its brief relative to the motion for judgment notwithstanding the verdict.
It is first claimed in this regard that Whitney was an *161 independent contractor, and that G-rote-Bankin would not, therefore, he liable for his negligence. In a number of cases this court has had before it the question of whether or not a particular contract created the relation of independent contractor or principal and agent, and has offered definitions by which that question could be determined. In North Bend Lumber Co. v. Chicago, Milwaukee & P. S. R. Co., 76 Wash. 232, 135 Pac. 1017, the definitions formulated in a number of prior decisions of this court have been set out and the rule restated as follows:
“A contractor, to be independent, must exercise an independent employment. He must be at liberty to perform the work he undertakes in his own way, at his own time within the limits of the time fixed in the contract, and by such means as to him seems most suitable. This does not mean, of course, that the contract itself may not prescribe that the work shall be performed in a particular manner, or that certain parts of it must be completed within a time less than the time fixed for the completion of the whole, or that certain means shall be employed in the accomplishment of the work, but it means that control over these matters must not be left to the whim or caprice of the employer, or his representative, to be exercised as the work progresses. If such right of control is retained, if the employer reserves to himself, or to his representative, the right to control at his pleasure the manner and means by which the work contracted for is to be accomplished, if the employer may stand by and tell the person undertaking the work, where, when and how it shall be performed, such person is the agent and servant of the employer, and not an independent contractor. The employer may reserve to himself the right to judge of the result of the work, and may exercise this right as to the character of the work or as to the character of the materials used in the work while the work progresses without destroying the independent nature of the contract, but matters of this kind mark the limits of his rights; they *162 must relate to results, and not as to the means by which the results are accomplished.”
One of the tests to determine the question is whether the employer retained the right, or had the right under the contract, to control the mode or manner in which the work was to be done. Where the facts presented are as consistent with the theory of agency as that of independent contractor, the. burden is upon the one asserting the independency of the contractor to show the true relation of the parties. This may be a mixed question of law and fact, or of law alone. In Norwegian Danish M. E. Church v. Home Tel. Co., 66 Wash. 511, 119 Pac. 834, we said:
“These facts are quite as consistent with the theory of agency as that of independent contractor, and the burden shifts to appellant to show its true relation to the construction company, the best evidence of which would have been its contract; thus making a mixed question of law and fact, or one of law alone. ’ ’
We are unable to recognize any substantial distinction between this case and that of Buckley v. Harkens, 114 Wash. 468, 195 Pac. 250. In that case one W. H. Harkens, while driving an automobile in the city of Seattle, ran into an automobile owned and operated by the plaintiff, causing injuries to one Helen Buckley. Thereafter Mrs.-Buckley, her husband joining, began an action against Harkens and wife and the Garford Truck Company to recover damages for the injuries suffered. One of the defenses there, as here, was that of independent contractor. In that case Harkens, at the time of the accident, was in the employ of the Gar-ford Truck Company as salesman of its motor trucks, and received as compensation for his services the sum of $125 per month and a five per cent commission on the selling price. He owned the automobile that he *163 was driving at the time of the accident, and was allowed forty dollars per month by the truck company for its upkeep and drove it under a license as the property of the company. No restrictions were put upon Mm by the company as to the time when or the purpose for which he could drive the car. The accident occurred one evening on his way home after having-taken another employee to a ferry. In going- to the ferry it was necessary for him to go somewhat out of Ms direct route. The portion of the opinion covering this matter is as follows:
“The evidence we need not review at length. Briefly, it tended to show, and the jury were warranted' in finding, that Harkens at the time of the accident was in the employment of the motor company as a salesman of its motor trucks; that he received as compensation for his services the sum of one hundred and twenty-five dollars per month and a five per cent commission on the selling price of all sales of trucks made by him; that, while he owned the automobile which he was driving, he was allowed forty dollars per month for its upkeep; that he had no license authorizing him to drive the automobile as his own property, but drove it under the license of and as the property of the motor company; and that no restrictions were put upon him by the motor company as to the time when or the purposes for which he could drive the car.
“It would seem that, under these conditions, it would be difficult to conceive of a circumstance when it could be said as matter of law that he was not driving- the car as servant and agent of the motor company; but be this as it may, there was nothing in the particular circumstance that compels the conclusion. The facts shown were that, at the close of business on the day of the accident, Harkens left the company’s place of business with the automobile for the purpose of going- to his home; that, on leaving, he carried another employee of the company with Mm, going- somewhat out of Ms direct route to put such employee off at a ferry; and *164 that the accident happened while he was on his way home from the ferry. We cannot think, therefore, that the verdict was without evidence in its support, and it follows that the court erred in setting it aside for that reason.”
It is true in that case that the court reversed a judgment of the trial court granting judgment to the defendant notwithstanding the verdict, and held that it was a question of fact as to whether the relation there was that of independent contractor or principal and agent, and as such was for the jury. Grote-Ranldn says in this case that the trial court erred in not submitting the question to the jury. This point would he well taken if there was a conflict in the evidence. But here the evidence presents no conflict as to the terms of the contract between Whitney and the company employing him. Three of the cases cited by Grote-Ranldn, upon this question should receive serious consideration.
In Barton v. Studebaker Corporation of America, 46 Cal. App. 707, 189 Pac. 1025, it was held that an automobile salesman, working upon a commission, with no salary and no fixed hours, was an independent contractor, and that the company was not liable for the negligent acts of such salesman whereby a third person was injured. Under the terms of employment in that case the defendant corporation, as stated in the opinion, could exercise no authoritative control over the work of its salesman, and therefore the relation was that of independent contractor.
Upon a similar statement of facts, a like result was arrived at in Premier Motor Mfg. Co. v. Tilford, 61 Ind. App. 164, 111 N. E. 645.
In Gall v. Detroit Journal Co., 191 Mich. 405, 158 N. W. 36, it was held that one employed to deliver newspapers at a fixed compensation with the right of the *165 employer to determine the time of delivery and the routes and schedules was an independent contractor.
It may he that the Barton and Premier Motor Mfg. Co. cases could be distinguished upon the facts from the case now before us, but when read in the light of the Gall case, and applying the doctrine of that case, the three cases could not each be distinguished. In neither of the first two was there any requirement as to the time of service, or any compensation except commission. In the Gall case, both these elements were present, and yet it was held that there the employee was an independent contractor. The doctrine of those cases is not in harmony with the views expressed by this court in Buckley v. Harkens, supra. We have not overlooked the fact that in that case the employer paid forty dollars per month for the upkeep of the car, and that the license was in its name. But these are not controlling features. In that case no restriction was put upon the employee by the motor company as to the times when or the purpose for which he should drive the car. The employment was that of salesman for motor trucks, and it was remunerated with a fixed wage and a commission. Had Whitney been employed in the store and negligently injured one while pursuing the course of his employment, it would not be contended that Grote-Rankin would not be liable therefor. The fact that his employment took him out of the store does not relieve the company from his acts of negligence, providing that, at the time of the accident, he was acting within the scope of his employment.
The next point upon this branch of the case is that the use of the automobile by Whitney had not been authorized by Grote-Rankin, and for this reason it is claimed the company is not liable. At the time Whitney was employed, nothing was said about transporta *166 tion or the means by which he should get about the city to see prospective customers. After he had been employed for a time, the evidence shows, or at least a reasonable inference from the evidence is, to the effect, that one of the managers of the company under whose supervision "Whitney came knew that he was using an automobile in his business. No objections were made thereto and it appears to have been perfectly satisfactory that Whitney should use the car or any other mode of travel that he might elect. In Gibson v. Dupree, 26 Colo. App. 324, 144 Pac. 1133, the defendant operated a garage, and one of its employees, without the knowledge of his employer, and after being forbidden by it to take any car out of the garage for any purpose except as directed by the employer, took a car to go to a battery station and get a battery which had been charged. After obtaining the battery, and on the way back to his place of employment, an accident occurred whereby the plaintiff was injured. Suit was brought against both the employee and the employer, and there was no claim that, as to the former, he had not been guilty of negligence in injuring the plaintiff. It was there said:
“Apart from his driving the car to the supply house where he bought the pair of pliers, which will be referred to later, the facts disclose, and the jury so found, that he was about his masters’ business and within the scope of his employment in going after the battery, and in returning with it, although he was using a means of carrying it, suggested and carried out by his own will and for his personal convenience, and contrary to the directions of his employers, and without their consent or the consent of the owner. And as the accident occurred when he was so returning, his employers are liable for the- tort committed. ‘ This rule is obviously founded on the great principle of social duty, that every man in the management of *167 Ms own affairs, whether by himself or by his agents or servants, shall so conduct them as not to injure another.’ Farwell v. Boston, etc., R., 4 Metc. (Mass.) 49. Furthermore, ‘ a master is answerable because the servant is about the master’s' business, and it is, on the whole, better that the master should suffer for defaults in the conduct of the business, than that innocent tMrd parties should bear the losses that such defaults cast upon them.’ ”
In the present case, the evidence shows that, by the use of the automobile, WMtney was able to see more people and, presumably, make more sales than he would have been had he used any other method of transportation. His employer was directly benefited by this fact. The automobile has become a thing of necessity in the transaction of many kinds of business, and it seems to us that it would be unreasonable to hold that the employer was not liable because the employee was making use of an automobile directly benefiting employer and employee.
St. Louis, I. M. & S. R. Co. v. Robinson, 117 Ark. 37, 173 S. W. 822, was a case in wMch the railway company employed a boy to call railway crews when they were to go out on their respective runs, and who used a bicycle for tMs purpose, and it was there held that the railway would not be liable to a third person injured by the boy while using the bicycle; the court saying that the bicycle was not necessary for him to perform his duties because time and distance were such that he could have done the same service by walking. There is this difference between that case and the case here in that the bicycle was held not to benefit the employer, wMle here the car, as we have seen, did. If this be not a sound distinction, then we think the rule of that case should not be adopted in this jurisdiction and applied to the use of automobiles.
*168 The case of Stretton v. City of Toronto, 13 Ont. Rep. 339, was where an employee wrongfully made use of a horse and buggy for the purpose of going after a wrench, and while on the trip injured the plaintiff. It was there held that the defendant was not liable, since the use of the vehicle was wrongful and not necessary to the performance of the errand. This case is less closely in point than the bicycle case and further comment is not necessary.
A third point made on the motion for judgment notwithstanding the verdict is that the accident occurred after Whitney had completed his day’s work.. But this does not necessarily prevent a recovery. The manager of the department in which Whitney was employed testified that he gave no thought to the time of day or evening when Whitney might succeed in getting an order for a furnace, and that he was never told not to work after 5:15 o’clock p. m., and never specifically authorized to so work. As above stated, the visit of Whitney to the prospective customer was at about seven o’clock in the evening and before dark, after it had been suggested by this customer that Whitney call upon him during the evening. It cannot be held that, because a person employed to go about the city soliciting business goes to see a prospective customer after the time in which he was required to work and upon the business of his employer, it necessarily follows that he was not acting within the scope of his employment. In Roberts v. Southern R. Co., 143 N. C. 176, 55 S. E. 509, 8 L. R. A. (N. S.) 798, it was said:
“The test is not whether the act was done while Bradley was on duty or engaged in his duties; but was it done within the scope of his employment and in the prosecution and furtherance of the business which was given him to do ?
*169 “As held in Sawyer v. Railroad, at the present term, quoting from Wood on Master and Servant, sec. 307: ‘The simple test is whether they were acts within the scope of his employment — not whether they were done while prosecuting the master’s business, but whether they were done by the servant in furtherance thereof, and were such as may be fairly said to be authorized by him. By authorized is not meant authority expressly conferred; but whether the act was such as was incident to the performance of the duties intrusted to him by the master, even though in opposition to his express and written orders’.”
Under the evidence in this case, it cannot be said, as a matter of law, that Whitney, in visiting the prospective customer after the regular store hours, was not acting within the scope of his employment.
Upon the motion for a new trial, Grote-Bankin presents a number of points, the most of which relate to instructions given or the refusal to give requested ones. Without reviewing the matter of instructions in detail, it may be said that we have given careful consideration to the instructions given as well as those refused, and we find no error in this regard. The issues in the case proper for the jury to determine were presented to them in the instructions given, and the law applicable to the case was correctly stated.
It is contended, however, that the verdict was excessive, and for this reason a new trial should be granted, because the jury was acting under the influence of passion and prejudice. The evidence shows that the respondent had three ribs broken; that his spine was injured ; that he was in bed for about six weeks; that he had not been able to do any work since the injury and prior to the trial; that he was in a nervous condition and had suffered much pain, and that prior to this he had been strong and well. A doctor called by Grote-Bankin, it is true, testified that the X-ray plates which *170 he took showed a normal spine, and that in his examination he did not find any evidence of permanent injury resulting from the accident. The doctor testifying for respondent, and who had treated him since the injury, gave evidence which would confirm the serious nature of the injury to the spine. Under these circumstances, we cannot say the verdict is so large as to show passion and prejudice on the part of the jury. A review of other cases and what has been sustained in them does not seem necessary, because, as pointed out in Barney v. Anderson, 116 Wash. 352, 199 Pac. 452, “there can be no hard and fast rule in such cases because of the fluctuating purchasing power of money and circumstances more or less peculiar in each individual case. ’ ’
Another point made upon the motion for a new trial is that of newly discovered evidence. Affidavits were presented, which were taken about a month after the trial, from three or four persons at Missoula, Montana, where the respondent formerly lived, and which affiants had been personally acquainted with him prior to the trial and had seen him since, and these were to the effect that his physical appearance was no different than it had been for a number of years prior to the injury. The brother of the respondent and his wife testified upon the trial that, prior to the accident, the respondent had an erect carriage, and that his back, at the time of the trial, was not in the condition it had been before. As we read the record, this was not one of the prominent issues in the case. It was claimed that the lower part of the spine was injured. While the rounded condition of the shoulders may have been a matter of argument to the jury on the trial, the evidence does not disclose that this was one of the important elements of damage relied upon. The injury *171 relied upon was to the lower part of the spine. The judgment should not he disturbed upon the ground of newly discovered evidence.
Upon Whitney’s appeal, little need he said. The question there was plainly one for the jury. It is complained that the court did not give an instruction which presented this appellant’s theory of the case. An instruction was requested to the effect that if Whitney received a blow on the head and remembered nothing-other than the cranking of his car, and if the car was caused to roll hack by the cranking, there could he no recovery. This requested instruction was modified and given to the effect that if Whitney, in backing the car, acted unconsciously without knowing that he was doing such an act, and not carelessly or thoughtlessly, then he would not he chargeable with negligence. The instruction given properly presented the issue to the jury. There was no evidence that the cranking of the car caused it to move upon the respondent, but the evidence is that, after cranking, WTfitney got into the car and was operating it when the respondent was injured.
It is further claimed there was no evidence as to the reasonable value of the services of a doctor which, under the instructions, might he included in the amount of the recovery. " It is sufficient answer to this contention to say that the evidence offered upon the matter was not objected to on this ground.
The judgment will he affirmed.
Parker, C. J., Mackintosh, Hovey, and Holcomb, JJ., concur.