[No. 21428–4–I.   Division One.   May 22, 1989.]

AUBREY DELBERT GIBSON, *Appellant*, v. THE DEPARTMENT OF LICENSING, *Respondent*.

*Phil Mahoney,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Gwendolyn Howard, Assistant,* for respondent.

WINSOR, J.—Aubrey Gibson appeals the revocation of his driver's license pursuant to RCW 46.20.308 for refusing to submit to a test to determine the alcohol content of his blood. He contends that he was "in a condition rendering him incapable of refusal" because he suffers from manic depression illness, and that requiring an insane person to exercise an intelligent judgment whether to submit to a test to determine the alcohol content of his blood is an unconstitutional denial of due process. We affirm.

Seattle Police Officer Dolan responded to a 4–car hit–and–run collision on March 9, 1986, at approximately 7 p.m. Witnesses at the scene provided a description of the hit–and–run driver's vehicle, his license plate number, and the direction of flight. When Dolan located the hit–and–run vehicle, Gibson was sitting behind the wheel.

Responding to Dolan's request to exit the car, Gibson almost fell down. Dolan noted a heavy odor of alcohol and arrested Gibson for hit–and–run driving.

Dolan transported Gibson to the North Precinct and asked him to perform various physical tests. Gibson willingly attempted each test, but could not perform them correctly. He was then arrested for driving while under the influence of intoxicants and for negligent driving.

Dolan read Gibson his implied consent warnings from the alcohol influence report form. Gibson stated that he understood the warning, and signed the form in Dolan's presence. Dolan believed that Gibson understood the warning. Dolan

then asked Gibson whether he would submit to a breath test. Gibson refused.

Dolan prepared a report of refusal which was sent to the Department of Licensing. The Department of Licensing revoked Gibson's license because he refused to take the breath test. Gibson appealed the decision, and a trial de novo was held in King County Superior Court.

At trial, Gibson presented an "insanity defense." Gibson contended that he was "in a condition rendering him incapable of refusal," *see* RCW 46.20.308(4), because he was psychotic when Dolan asked him to take the breath test. Gibson's psychiatrist, Dr. John Edward Hamm, testified that Gibson suffers from a mood disorder, specifically manic depression. Hamm opined that Gibson was in a psychotic state of mind on March 9, 1986, but could not state the extent thereof. Hamm stated that Gibson would have had trouble understanding the legal import of the implied consent warning and the consequences of noncompliance, because his perception would be impaired by his psychosis. Hamm admitted that Gibson's alcohol consumption would also impair his cognition.

The trial court sustained the revocation of Gibson's license, stating:

> Even if the court believed that Mr. Gibson was in a manic depressive state and therefore not able to understand the consequences of a refusal to submit to a breathalyzer test it would be of no consequence as it only need be shown that the driver was informed of his right to refuse the test, that he was warned that his privilege to drive would be revoked if he refused to submit to the test, and his right to have additional tests.

Gibson appeals from this ruling.

The Department of Licensing derives its authority to revoke the driver's license of a person who refuses to submit to a test to determine the alcoholic content of his or her breath or blood from Initiative 242, a measure overwhelmingly approved by the voters of Washington in the November 1968 election. Initiative 242, now codified as

RCW 46.20.308, provides that a driver on the public highways is deemed to have given his consent to a test to determine the alcohol content of his blood or breath

> if arrested for any offense where, at the time of the arrest, the arresting officer has reasonable grounds to believe the person had been driving or was in actual physical control of a motor vehicle while under the influence of intoxicating liquor.

RCW 46.20.308(1).

A person's refusal to submit to the test triggers an administrative process in which, upon receipt of the officer's sworn statement that the statutory requirements have been met, the Department of Licensing revokes the person's driver's license. RCW 46.20.308(6). The driver is afforded an opportunity for a hearing to determine whether the law enforcement officer had reasonable grounds to believe the licensee had been under the influence of intoxicating liquor; and whether the licensee: (a) was placed under arrest; (b) was fully advised and warned of implied consent rights and consequences;[1] and (c) refused the officer's request that s/he submit to a test to determine the degree, if any, of intoxication. If the revocation order is sustained, the licensee is entitled to a trial de novo in superior court. *Department of Motor Vehicles v. Andersen,* 84 Wn.2d 334, 340, 525 P.2d 739 (1974); RCW 46.20.308(7), (8); RCW 46.20.334.

Gibson concedes that the officer had reasonable grounds to believe that he had been driving a motor vehicle while under the influence of intoxicating liquor, that he had been placed under arrest, and that he was fully advised and warned of the implied consent rights and consequences. Gibson argues, however, that because he was insane and thus incapable of making a rational decision regarding the

---

[1] The driver must be informed of: (1) his or her statutory right to refuse the test; (2) his or her right to have other tests administered by any qualified person of his or her own choosing at his or her expense; (3) that if s/he refuses the test, his or her license will be revoked; and (4) that his or her refusal to take the test may be used in a criminal trial. RCW 46.20.308(2).

officer's request, he is deemed not to have withdrawn the consent provided by RCW 46.20.308(1), and thus his driver's license should not have been revoked.

Gibson relies upon RCW 46.20.308(4), which provides:

> Any person who is dead, unconscious, or who is otherwise in a condition rendering him incapable of refusal, shall be deemed not to have withdrawn the consent provided by subsection (1) of this section and the test or tests may be administered, subject to the provisions of RCW 46.61.506, and the person shall be deemed to have received the warnings required under subsection (2) of this section.

■■ The issue before us is one of statutory construction: whether the phrase "or who is otherwise in a condition rendering him incapable of refusal," includes temporary periods of psychosis or insanity. The basic rules of statutory construction applicable to legislative enactments also apply to direct legislation by the people in the form of an initiative. *Seeber v. Public Disclosure Comm'n,* 96 Wn.2d 135, 139, 634 P.2d 303 (1981); *Department of Rev. v. Hoppe,* 82 Wn.2d 549, 552, 512 P.2d 1094 (1973). Our interpretation is guided by the rule of ejusdem generis.

> The *ejusdem generis* rule requires that general terms appearing in a statute in connection with specific terms are to be given meaning and effect only to the extent that the general terms suggest items similar to those designated by the specific terms. In short, specific terms modify or restrict the application of general terms where both are used in sequence.

*Dean v. McFarland,* 81 Wn.2d 215, 221, 500 P.2d 1244, 74 A.L.R.3d 378 (1972); *see generally* 2A C. Sands, *Statutory Construction* § 47.17 (4th rev. ed. 1984).

■ RCW 46.20.308(4) specifically mentions death and unconsciousness. Both death and unconsciousness are physical states that are readily discernible to an observer such as a police officer. In either condition an officer has the statutory authority to substitute a blood test for a breath

test. *See* RCW 46.20.308(2).[2] Consequently, the ejusdem generis rule restricts the general phrase, "or who is otherwise in a condition rendering him incapable of refusal," to other *physical* conditions for which a blood test is authorized that, like death and unconsciousness, clearly appear to prevent a driver from responding to the officer's request. For instance, a driver might be covered within the general phrase if s/he were conscious, but had sustained such severe mouth and facial injuries that s/he apparently could not speak or was apparently in such pain that communication was highly unlikely. *E.g., State v. Barefield,* 110 Wn.2d 728, 736–37, 756 P.2d 731 (1988).

This reading of the statute is consistent with the purpose underlying the implied consent statute: to control or reduce the drunk driver hazard to highway safety. *E.g., Nowell v. Department of Motor Vehicles,* 83 Wn.2d 121, 124, 516 P.2d 205 (1973); *State v. Moore,* 79 Wn.2d 51, 53–55, 483 P.2d 630 (1971); *see also Illinois v. Batchelder,* 463 U.S. 1112, 1118, 77 L. Ed. 2d 1267, 103 S. Ct. 3513 (1983) (implied consent statutes enacted to halt the carnage caused by drunk drivers). It is also consistent with the intended implementation of the statute:

> The people of this state, in adopting this initiative, must have had in mind the fact that there are varying degrees of intoxication, and that the more intoxicated one becomes, the less he is capable of exercising an intelligent judgment. *They nevertheless expressed an intent that any intoxicated person having sufficient control of his faculties to operate a motor vehicle should submit either to a test for blood alcohol or to the revocation of his license.*

---

[2]RCW 46.20.308(2) provides in part, that "in those instances where: (a) The person is incapable due to physical injury, physical incapacity, or other physical limitation, of providing a breath sample; or (b) as a result of a traffic accident the person is being treated for a medical condition in a hospital, clinic, doctor's office, or other similar facility in which a breath testing instrument is not present, a blood test shall be administered by a qualified person as provided in RCW 46.61-.506(4)."

(Italics ours.) *Department of Motor Vehicles v. McElwain,* 80 Wn.2d 624, 627–28, 496 P.2d 963 (1972).

The trial court correctly construed RCW 46.20.308(4): temporary psychosis or insanity is not a defense to license revocation for refusing to submit to a test to determine the alcohol content of one's blood or breath.

*Gibson* contends, however, that such a construction violates due process. The suspension of a driver's license for statutorily defined cause implicates a protectible property interest. *Mackey v. Montrym,* 443 U.S. 1, 11, 61 L. Ed. 2d 321, 99 S. Ct. 2612 (1979); *Bell v. Burson,* 402 U.S. 535, 539, 29 L. Ed. 2d 90, 91 S. Ct. 1586 (1971). The State may not deprive a person of his or her driver's license without satisfying the requirements of due process. *Bell,* 402 U.S. at 539. Due process is satisfied if the driver is given notice and a meaningful opportunity to be heard to protect against an erroneous deprivation of his license. *E.g., Mackey,* 443 U.S. at 10–11; *Bell,* 402 U.S. at 541–43.

■■ Here, Gibson was given notice and a meaningful opportunity to be heard before his license was revoked. He contends, however, that it violates due process to require an insane person to make an intelligent decision regarding his or her statutory rights where the decision could lead to a loss of license. But due process of law is not applicable unless one is being deprived of something to which one has a right. *Yantsin v. Aberdeen,* 54 Wn.2d 787, 788, 345 P.2d 178 (1959); *State v. Melos,* 42 Wn. App. 638, 642, 713 P.2d 138, *review denied,* 105 Wn.2d 1021 (1986).

The right to withdraw one's implied consent to a breath test is given by statute. *State v. Whitman Cy. Dist. Court,* 105 Wn.2d 278, 281, 714 P.2d 1183 (1986). RCW 46.20.308 provides that one be advised of the opportunity to exercise a knowing and intelligent judgment concerning his or her statutory right of refusal. *Whitman Cy. Dist. Court,* 105 Wn.2d at 281. Thus, one has the *right* to have accurate warnings given that are phrased so that one of normal intelligence would understand the consequences of his or her actions. *Schoultz v. Department of Motor Vehicles,* 89

Wn.2d 664, 668–69, 574 P.2d 1167 (1978); *Roethle v. Department of Licensing*, 45 Wn. App. 607, 610, 726 P.2d 1001 (1986), *review denied*, 107 Wn.2d 1030 (1987). Revoking the license of someone who was not given such warnings would violate due process.

The statute (RCW 46.20.308) does not, however, state that the driver's decision must be knowingly and intelligently made, and our courts have never read such a condition into the statute. *McElwain*, 80 Wn.2d at 628. Thus, a conscious person who has been given the required warnings, but who is incapable of responding knowingly and intelligently to the warnings, is not being deprived of any right granted to her or him under the statute. Therefore, revocation of the driver's license of a person who was incapable of making an intelligent decision regarding whether to refuse a breath test does not violate due process. *Yantsin v. Aberdeen, supra; State v. Melos, supra.*

We affirm the revocation of Gibson's driver's license.

SCHOLFIELD and PEKELIS, JJ., concur.

Reconsideration denied July 18, 1989.

Review denied at 113 Wn.2d 1020 (1989).