[No. 12919-5-III.    Division Three.    April 14, 1994.]

JAMES R. NETTLES, *Respondent*, v. THE DEPARTMENT OF LICENSING, *Appellant*.

*Christine O. Gregoire, Attorney General,* and *David M. Hankins, Assistant,* for appellant.

*Andrew D. Peach,* for respondent.

THOMPSON, C.J. — The Department of Licensing revoked James Nettles' driver's license based upon his refusal to submit to a blood alcohol test. The Superior Court reversed, and the Department appeals. It assigns error to the court's conclusion the Department had the burden of demonstrating that Mr. Nettles, who was seriously injured in an automobile accident, was capable of refusing the test. We reverse the Superior Court and reinstate the Department's decision.

On July 29, 1990, State Trooper Darren Hettinger was called to the scene of a 1-car accident near Twisp, Washington. Mr. Nettles was lying next to his Jeep and was covered with blood from his head to his waist. Trooper Hettinger testified Mr. Nettles did not appear to be in pain. In answer to the trooper's questions, Mr. Nettles said he did not know whether he was the driver of the Jeep, then he affirmatively stated he had been alone in the vehicle. Mr. Nettles started singing and laughing. Trooper Hettinger noticed a strong odor of intoxicants on his breath.

Mr. Nettles was taken to the Twisp Medical Center. Trooper Hettinger followed, and arrested him for reckless driving and driving while under the influence of alcohol. Trooper Hettinger advised Mr. Nettles of his constitutional rights. Mr. Nettles indicated he understood his rights, and he refused to waive them. The trooper read him the implied consent warnings for blood testing. Mr. Nettles refused to submit to a blood test. Trooper Hettinger testified he did not take an involuntary blood sample because Mr. Nettles did not come within the statutory provisions for such a test.[1]

---

[1]RCW 46.20.308(3) provides:

"Except as provided in this section, the test administered shall be of the breath only. If an individual is unconscious or is under arrest for the crime of vehicular homicide as provided in RCW 46.61.520 or vehicular assault as provided in RCW 46.61.522, or if an individual is under arrest for the crime of driving while under the influence of intoxicating liquor or drugs as provided in

On cross examination, Trooper Hettinger admitted he had printed "I ain't OK" at the bottom of the implied consent form. The trooper said he did not remember why he had done so, but he thought probably Mr. Nettles had made that statement to him at some point in time. Trooper Hettinger also admitted asking the emergency room physician whether he thought Mr. Nettles was conscious. The defense did not inquire as to what the doctor's response was.

In his testimony, Mr. Nettles described his injuries, which included numerous lacerations, a cerebral concussion, collapsed lung, bruised lung, broken ribs, broken scapula, and many bruises. He stated he did not remember much about what happened after the accident, and he remembered nothing about Trooper Hettinger or the questions he asked.

RCW 46.20.308(4) provides that persons who are "dead, unconscious, or . . . otherwise in a condition rendering [them] . . . incapable of refusal . . ." are deemed not to have withdrawn their implied consent to tests measuring their blood alcohol levels. In its oral ruling reversing the Department's decision to revoke Mr. Nettles' license, the court cited Mr. Nettles' injuries and its belief emergency workers had medicated him by the time Trooper Hettinger asked him to submit to the blood test.[2] The court concluded (1) the Department had the burden of demonstrating Mr.

---

RCW 46.61.502, which arrest results from an accident in which another person has been injured and there is a reasonable likelihood that such other person may die as a result of injuries sustained in the accident, a breath or blood test may be administered without the consent of the individual so arrested."

[2]The judge commented: "I'm highly suspicious that they hadn't given him [Mr. Nettles] something [medication]. I don't know that. I have no evidence of that. I'm just awful suspicious.

"And I've pretty much drawn the line in the past at that point. When they start shooting people full of drugs, funny things start to happen to people. And I don't think that warnings and consents are worth much when that kind of thing happens. . . .

"He . . . had head injuries. He was bleeding profusely. He had a collapsed lung. He was taken to the hospital. And to say that he was appropriately given warnings at that time and . . . whether he refused [the test] having any idea what he was doing, I'm not satisfied. This preponderance of the evidence, the State doesn't carry the burden in my view."

Nettles was capable of refusal before his consent was sought, and (2) the Department failed to carry that burden, offering no medical evidence concerning Mr. Nettles' mental capacity.

The Department assigns error to the foregoing conclusions. It contends the evidence that Mr. Nettles verbally refused the test after Trooper Hettinger advised him of the implied consent warnings is sufficient to support the revocation of his driver's license.

■ In *Gibson v. Department of Licensing*, 54 Wn. App. 188, 193, 773 P.2d 110, *review denied*, 113 Wn.2d 1020 (1989), the court construed RCW 46.20.308(4). The court held that the phrase "otherwise in a condition rendering [the driver] incapable" of refusing a blood alcohol test is restricted to "other *physical* conditions" which "*clearly appear* to prevent a driver from responding to the officer's request." (Some italics ours.) *Gibson*, at 193. We adopted *Gibson*'s holding in *Steffen v. Department of Licensing*, 61 Wn. App. 839, 847, 812 P.2d 516 (1991).

The *Gibson* construction is practical in its application because it focuses upon the arresting officer's reasonable perceptions of the driver's capacity; he does not have to "guess" what the driver's mental capacity, in fact, is. It is also consistent with cases which hold that the implied consent law does not require that the driver make a knowing and intelligent decision to refuse the test; it only requires that the driver have the *opportunity* to exercise an informed judgment. *Gibson*, at 195 (citing *Department of Motor Vehicles v. McElwain*, 80 Wn.2d 624, 628, 496 P.2d 963 (1972)).

Based upon the above authority, we hold that the trial court erred when it concluded the Department failed to satisfy its burden of proof. The Department presented evidence that Mr. Nettles, although injured, was talking and responded to Trooper Hettinger's questions. Trooper Hettinger fully advised him of his constitutional rights and his rights under the implied consent law. He refused to waive his constitutional rights, and he also refused to take a blood test. This evidence was sufficient to show Mr. Nettles had the opportunity to make an informed decision. The Depart-

ment did not have the burden of proving Mr. Nettles in fact had the mental capacity to make a knowing and intelligent decision.

The judgment of the Superior Court is reversed and the Department's decision revoking Mr. Nettles' license is reinstated.

SWEENEY and SCHULTHEIS, JJ., concur.