103 F.3d 128
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
CITY OF TOLEDO, et al, Plaintiffs,
Interlake Corporation, et al, Plaintiffs-Appellees,
v.
BEAZER EAST, INC., et al, Defendant-Appellant.
 No. 96-3500.
 United States Court of Appeals, Sixth Circuit.
 Nov. 22, 1996.
 
 On Appeal from the United States District Court for the Northern District of Ohio, No. 90-07344; James D. Thomas, Magistrate Judge.
 N.D.Ohio, 912 F.Supp. 1051.
 REVERSED.
 Before: SUHRHEINRICH and DAUGHTREY, Circuit Judges; and JOHNSTONE, District Judge.*
 PER CURIAM.
 
 
 1
 Cross-Defendant-Appellant Beazer East Inc. ("Beazer") challenges the district court's conclusion that it agreed to assume all environmental liabilities associated with Cross-Plaintiffs-Appellees' The Interlake Corporation, The Interlake Companies, Inc., and Acme Steel Company (collectively, "Interlake's") prior ownership and operation of a coke plant. For the following reasons, we REVERSE and REMAND.
 
 I.
 
 2
 The City of Toledo ("City") is current owner of land that was once a part of Interlake's former benzene impoundment. The City sued all former owners of the land, including Interlake and Beazer, seeking declarative and monetary relief under CERCLA[1], and injunctive relief under RCRA[2]. Interlake cross-claimed against Beazer seeking a declaration that Beazer, pursuant to the October 30, 1978 Asset Purchase Agreement ("Agreement"), and a related Instrument of Assignment and Assumption ("Instrument")[3], assumed all of Interlake's liabilities for environmental contamination and that Beazer also promised to defend, indemnify, and hold Interlake harmless for any environmental cleanup resulting from Interlake's waste management and disposal practices. Beazer cross-claimed against Interlake, claiming that Interlake agreed to defend, indemnify, and hold Beazer harmless as to certain of the City's claims.
 
 
 3
 The district court held[4] that the Agreement and Instrument expressly and unambiguously evidenced Beazer's intent to assume and indemnify Interlake against all environmental liabilities associated with the Plant, including subsequently imposed, remedial CERCLA-type liabilities. The court determined that the phrase "the discharge at or by the Toledo Coke Plant of industrial products, waste or other materials into the air, streams, lakes, river or otherwise ..." in § 3.1(c)(ii) of the Agreement encompassed Interlake's placing of benzene in the land-based benzene impoundment. In doing so, the court held that the term "discharge" in the Agreement is interchangeable with the definition of "disposal" in RCRA, 42 U.S.C. § 6903, and equated each word with "placing of any solid waste or hazardous waste into or on any land or water." The court entered summary judgment against Beazer and in favor of Interlake on all contractual cross-claims between the two, and later entered final judgment pursuant to Fed.R.Civ.P. 54(b).
 
 
 4
 On appeal Beazer argues that the district court's interpretation of § 3.1(c)(ii) is erroneous because it ignores the nature of regulations in effect in 1978, which were purely prospective; ignores ambiguities in the contract, which under Ohio law, preclude indemnity as a matter of law; and in any event, the plain language of the indemnity provision precludes indemnity for CERCLA-type liabilities.
 
 II.
 
 5
 Parties to a contract are free to shift CERCLA liability by means of assumption or indemnity agreement. 42 U.S.C. § 9607(e); City Management Corp. v. U.S. Chemical Co., 43 F.3d 244, 255 (6th Cir.1994); AM Int'l, Inc. v. Int'l Forging Equip. Corp., 982 F.2d 989, 994 (6th Cir.1993); Niecko v. Emro Mktg. Co., 973 F.2d 1296, 1300-01 (6th Cir.1992).[5] State law determines whether a particular assumption of liabilities provision covers CERCLA costs. Beazer East, Inc. v. Mead Corp., 34 F.3d 206, 212 & n. 2 (3d Cir.1994) (collecting cases), cert. denied, 115 S.Ct. 1696 (1995). The parties agree that Ohio law applies.
 
 
 6
 Under Ohio law, interpretation of written contracts is a matter of law for the court. Potti v. Duramed Pharmaceuticals, Inc., 938 F.2d 641 (6th Cir.1991). If the court determines as a matter of law that the language is ambiguous, the question of the parties' intent becomes one of fact. Id. Contrary to Beazer's suggestion, ambiguous assumption of liabilities/indemnity clauses are not per se construed against the drafter. See Glaspell v. Ohio Edison Co., 505 N.E.2d 264, 265, 266 (Ohio 1987) (holding that general rule that clauses limiting liability of drafter are to be strictly construed need not apply when parties are sophisticated entities). See also Glaspell 505 N.E.2d at 268 (Douglas, J. dissenting) (remarking that new rule created for business entities flatly refutes requirement of George H. Dingledy Lumber Co. v. Erie R. Co., 131 N.E. 723 (1921); and Kay v. Pennsylvania R. Co., 103 N.E.2d 751 (1952) for strict construction of agreements limiting the liability of the drafter in situations where the parties thereto are business entities).
 
 
 7
 Ambiguity exists only where a term cannot be determined from the four corners of the agreement or where contract language is susceptible to two or more reasonable interpretations. See, e.g., Wells v. American Elec. Power Co., 548 N.E.2d 995 (1988).
 
 
 8
 Beazer argues that "discharge ... into" can only mean operational discharges from the coke plant into the air or a body of water beyond the boundaries of the coke plant. However, because the term "discharge" is undefined, and there is no express reference in the Agreement or Instrument to RCRA, it is unclear whether the parties intended "discharge" to be synonymous with the definition of "disposal" found in RCRA. Relatedly, it not clear from the language of the Agreement whether the parties' contemplated discharges into land. Thus, under Ohio law, the matter must be remanded to a factfinder. On remand, the parties are free to introduce extrinsic evidence, including the purchase price, as well as the parties' awareness of environmental problems at the plant and the environmental regulatory horizon.
 
 III.
 
 9
 This matter is REVERSED and REMANDED for further proceedings consistent with this opinion. SO ORDERED.
 
 
 
 *
 The Honorable Edward H. Johnstone, United States District Judge for the Western District of Kentucky, sitting by designation
 
 
 [1]
 The Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C.A. §§ 9601-75 (West 1995 & 1996 Supp)
 
 
 [2]
 The Resource Conversation and Recovery Act, 42 U.S.C.A. §§ 6901-992k (West 1995 & 1996 Supp)
 
 
 [3]
 The disputed language of the Agreement provides: 3.1 Liabilities to be Assumed. Upon the terms and subject to the conditions set forth herein, Seller shall assign to Buyer and Buyer shall assume at the Closing by an appropriate instrument of assignment and assumption ... all debts, obligations, duties, undertakings, agreements, contracts and liabilities of Seller of any kind or nature whatever, whether direct or indirect, absolute or contingent, which consist of, arise out of, or in any way relate to, any of the following (collectively, the "Toledo Code Liabilities"):
 ....
 (c) Any law, statute, ordinance, order, rule, regulation, decree, application, permit, agreement (whether executory or partially performed) or commitment whether arising prior to, on or subsequent to the Closing and relating to ... (ii) the discharge at or by the Toledo Coke Plant of industrial products, waste or other materials into the air, streams, lakes, rivers or otherwise, ... provided however, that Buyer shall not assume any liability for, or obligation to pay, any fine or penalty arising out of Seller's operation of the Toledo Coke Plant prior to Closing.
 (Emphasis added.)
 
 
 [4]
 The district court's opinion is published at City of Toledo v. Beazer Materials and Serv., Inc., 912 F.Supp. 1051 (N.D.Ohio 1995)
 
 
 [5]
 This court's tolerance of assumption of liability/indemnity provisions makes irrelevant Beazer's policy-based, "polluter pays" argument. Furthermore, like other aspects of contracts, such provisions are negotiated for, and are ultimately reflected in the purchase price of corporate assets. Thus, the "polluter"-seller essentially "pays" for its pollution by accepting an arguably lower purchase price in exchange for releases from liability