[No. 85781-4.  En Banc.]
Argued November 15, 2011.      Decided May 31, 2012.

CERTIFICATION FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF WASHINGTON IN

JASON JONGEWARD ET AL., *Individually and as Trustees, Plaintiffs*, v. BNSF RAILWAY COMPANY, *Defendant*.

588

*Richard C. Eymann*, *Steven L. Jones*, and *John Allison* (of *Eymann Allison Hunter Jones PS*), for plaintiffs.

*Julie A. Owens*; and *Paul J. Lawrence* and *Gregory J. Wong* (of *Pacifica Law Group LLP*) (*Ausey H. Robnett* of *Paine Hamblen LLP*, of counsel), for respondent.

¶1 FAIRHURST, J. — This case[1] requires us to construe former RCW 64.12.030 (CODE OF 1881, § 602), the "timber trespass statute." *Birchler v. Castello Land Co.*, 133 Wn.2d 106, 114, 942 P.2d 968 (1997). Plaintiffs Jason and Laura Jongeward, husband and wife, and Gordon and Jeannie Jongeward, husband and wife, and as trustees of the Jongeward family trust (hereinafter collectively referred to as Jongeward) asserted a timber trespass claim against defendant BNSF Railway Company in the United States District Court for the Eastern District of Washington, after a fire spread from BNSF's property and destroyed Jongeward's trees. The court certified to us three questions:[2]

> QUESTION NO. [1]: Does a Defendant who negligently causes a fire that spreads onto Plaintiff's property, and damages or destroys Plaintiff's trees, "otherwise injure" trees, timber or shrubs for purposes of [former] RCW 64.12.030?

---

[1] *Jongeward* is a companion case to *Broughton Lumber Co. v. BNSF Railway*, 174 Wn.2d 619, 278 P.3d 173 (2012).

[2] We have reordered the questions. *See Broad v. Mannesmann Anlagenbau AG*, 196 F.3d 1075, 1076 (9th Cir. 1999).

QUESTION NO. [2]: Can a Plaintiff recover damages under [former] RCW 64.12.030 for trees damaged or destroyed by a Defendant who never has been physically present on Plaintiff's property?

QUESTION NO. 3: Must damages awarded under [former] RCW 64.12.030 be reasonable in relation to the value of the underlying real property?

Certification to Wash. State Supreme Ct. (Certification) at 3.

## I. FACTUAL AND PROCEDURAL HISTORY

¶2 The parties stipulated to the following facts that constitute the record under RCW 2.60.010(4):

This is a civil case brought by [Jongeward] against Defendant BNSF.

On August 11, 2007, a fire broke out at several points along the railroad right-of-way as a BNSF train passed through the Marshall area southwest of Spokane, Washington. [Jongeward] own[s] property located nearby but not adjoining the railroad right-of-way. The fire spread to [Jongeward's] property and destroyed about 4000 trees on the property. No employee or agent of BNSF was physically on [Jongeward's] property at any time relevant to the start or spread of the fire or the damage to [Jongeward's] trees. The Court has determined that BNSF negligently caused the fire that destroyed [Jongeward's] trees.

[Jongeward] [has] asserted a claim for damages under [former] RCW 64.12.030.

Certification at 2.

## II. ANALYSIS

■ ■ ¶3 Certified questions from federal court are questions of law that we review de novo. *Bradburn v. N. Cent. Reg'l Library Dist.*, 168 Wn.2d 789, 799, 231 P.3d 166 (2010). We consider the legal issues not in the abstract but based on the certified record provided by the federal court. *Id.* (citing RCW 2.60.030(2)).

¶4

QUESTION NO. [1]: Does a Defendant who negligently causes a fire that spreads onto Plaintiff's property, and damages or destroys Plaintiff's trees, "otherwise injure" trees, timber or shrubs for purposes of [former] RCW 64.12.030?

Certification at 3.

¶5 This question requires us to determine whether the timber trespass statute applies to BNSF's conduct. The meaning of a statute is a question of law we review de novo. *State v. Breazeale*, 144 Wn.2d 829, 837, 31 P.3d 1155 (2001). In interpreting a statute, our fundamental objective is to ascertain and carry out the legislature's intent. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002).

¶6 The territorial legislature enacted the timber trespass statute in 1869 to (1) punish a voluntary offender, (2) provide treble damages, and (3) "discourage persons from carelessly or intentionally removing another's merchantable shrubs or trees on the gamble that the enterprise will be profitable if actual damages only are incurred." LAWS OF WASH. TERR. 1869, ch. XLVIII, § 556, at 143; *Guay v. Wash. Natural Gas Co.*, 62 Wn.2d 473, 476, 383 P.2d 296 (1963). The statute contains two relevant sections. Former RCW 64.12.030 provides, "Whenever any person shall cut down, girdle or otherwise injure, or carry off any tree, timber or shrub on the land of another person, . . . without lawful authority, in an action by such person, . . . against the persons committing such trespasses," the prevailing plaintiff is entitled to treble damages.[3] RCW 64.12.040 provides,

---

[3] This is the text of former RCW 64.12.030 as it existed at the time of the fire. It reads in its entirety:

Whenever any person shall cut down, girdle or otherwise injure, or carry off any tree, timber or shrub on the land of another person, or on the street or highway in front of any person's house, village, town or city lot, or cultivated grounds, or on the commons or public grounds of any village, town or city, or on the street or highway in front thereof, without lawful authority, in an action by such person, village, town or city against the persons committing such

"If upon trial of such action it shall appear that the trespass was casual or involuntary, or that the defendant had probable cause to believe that the land on which such trespass was committed was his or her own, . . . judgment shall only be given for single damages."

¶7 In 1877, the territorial legislature reenacted both former RCW 64.12.030 and RCW 64.12.040, retaining the original language, and the timber trespass statute became the law of Washington at statehood. *See* LAWS OF WASH. TERR. 1877, ch. XLVIII, §§ 607-608, at 125. The text remained unchanged until 2009, when the legislature amended former RCW 64.12.030 to clarify that treble damages are available for the unlawful cutting of Christmas trees.[4] LAWS OF 2009, ch. 349, § 4. As a result of this amendment, a comma was inserted between the words "girdle" and "or." *Id.*

■ ■ ¶8 Because former RCW 64.12.030 and RCW 64.12.040 relate to the same subject matter, they must be construed together. *Hallauer v. Spectrum Props., Inc.*, 143 Wn.2d 126, 146, 18 P.3d 540 (2001). Former RCW 64.12.030 creates liability and imposes mandatory treble damages when a defendant cuts down, girdles or otherwise injures, or carries off a plaintiff's trees. RCW 64.12.040 serves as a mitigation provision. *See, e.g., Smith v. Shiflett*, 66 Wn.2d 462, 463, 403 P.2d 364 (1965) ("This is another case of trespassing loggers cutting timber and seeking to avoid the statutory treble damages by urging that they did not know

trespasses or any of them, if judgment be given for the plaintiff, it shall be given for treble the amount of damages claimed or assessed therefor, as the case may be.

[4] The current version of RCW 64.12.030 reads:

Whenever any person shall cut down, girdle, or otherwise injure, or carry off any tree, including a Christmas tree as defined in RCW 76.48.020, timber, or shrub on the land of another person, or on the street or highway in front of any person's house, city or town lot, or cultivated grounds, or on the commons or public grounds of any city or town, or on the street or highway in front thereof, without lawful authority, in an action by the person, city, or town against the person committing the trespasses or any of them, any judgment for the plaintiff shall be for treble the amount of damages claimed or assessed.

(Reviser's note omitted.)

they were trespassing." (footnote omitted)). "Once a trespass is established [under former RCW 64.12.030], the burden shifts to the defendant to show it was not willful or reckless, but rather was casual or involuntary, or done with probable cause to believe the land was his own." *Hill v. Cox,* 110 Wn. App. 394, 406, 41 P.3d 495 (2002) (citing *Seattle-First Nat'l Bank v. Brommers,* 89 Wn.2d 190, 197-98, 570 P.2d 1035 (1977)). To determine whether BNSF committed a statutory trespass in this case, we consider the statute's plain meaning, canons of construction, and Washington case law.[5]

A. Plain Meaning Analysis

¶9 If a statute's meaning is plain on its face, we must "give effect to that plain meaning as an expression of legislative intent." *Campbell & Gwinn,* 146 Wn.2d at 9-10. The plain meaning "is discerned from all that the Legislature has said in the statute." *Id.* at 11. Plain meaning may also be discerned from "related statutes which disclose legislative intent about the provision in question." *Id.* An examination of related statutes aids our plain meaning analysis " 'because legislators enact legislation in light of existing statutes.' " *Id.* (quoting 2A NORMAN J. SINGER, STATUTES AND STATUTORY CONSTRUCTION § 48A:16, at 809-10 (6th ed. 2000)).

---

[5] The dissent worries that our approach contradicts Oregon, Alaska, and New York law. But because Oregon and New York have markedly different statutes, and all three states have markedly different philosophies, our approach *should be* different. For example, while Oregon's statute was originally identical to ours, it now applies "whenever any person . . . willfully injures or severs from the land of another any produce thereof" and provides double damages even when a trespass is casual or involuntary. OR. REV. STAT. §§ 105.810(1), .815. Because Oregon's legislature broadened its statute and our legislature did not broaden ours, we should *construe our statute more narrowly.* Further, while Oregon, Alaska, and New York each allow general recovery of punitive damages, *see* OR. REV. STAT. § 31.730; ALASKA STAT. § 09.17.020; *Welch v. Mr. Christmas Inc.,* 57 N.Y.2d 143, 440 N.E.2d 1317, 454 N.Y.S.2d 971 (1982), Washington expressly prohibits punitive damages as a violation of public policy unless explicitly authorized by statute. *Barr v. Interbay Citizens Bank of Tampa, Fla.,* 96 Wn.2d 692, 635 P.2d 441, 649 P.2d 827 (1982); *see also Spokane Truck & Dray Co. v. Hoefer,* 2 Wash. 45, 25 P. 1072 (1891). The law of other states is simply not as persuasive as the dissent suggests.

### 1. *Statutory text*

¶10  As noted above, former RCW 64.12.030 applies when a defendant shall "girdle or otherwise injure" a plaintiff's trees. Because the adverb "otherwise" is defined as "in a different way or manner," Jongeward contends that the phrase "otherwise injure" clearly functions as its own distinct category of wrongful action that encompasses a defendant's failure to prevent the spread of a fire. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1598 (2002). According to Jongeward, the meaning of the statute is plain on its face.

¶11  But Jongeward's plain meaning analysis begins and ends with the phrase "otherwise injure." When read in isolation, the phrase "otherwise injure" could conceivably be read to encompass a defendant's failure to prevent a fire from spreading. This reading is too limited, however, because a statute's plain meaning must be "discerned from *all* that the Legislature has said in the statute," not just two words. *Campbell & Gwinn*, 146 Wn.2d at 11 (emphasis added).

■ ■ ¶12  The legislature used the term "trespass/trespasses" three times to describe the conduct that triggers statutory liability. A proper plain meaning analysis therefore begins with the term "trespass." Our analysis of the term is informed by the common law. *See Suter v. Wenatchee Water Power Co.*, 35 Wash. 1, 6, 76 P. 298 (1904) (" '[I]t is plain that we are bound to consult the common law, and the classification of common-law actions, for the proper determination as to what the law-making power of this state had in mind when using the [term] "trespass." ' " (quoting *Hicks v. Drew*, 117 Cal. 305, 308, 49 P. 189 (1897))). A subsequent change in the common law does not impact our statutory analysis. *See Spokane Methodist Homes, Inc. v. Dep't of Labor & Indus.*, 81 Wn.2d 283, 287, 501 P.2d 589 (1972) (Just because "the court makes a change in the common law, [a] statute which was enacted with the existing rule of common law in mind, is [not] automatically amended to

conform to the new rule adopted by the court."). We therefore do not consider the modern view of trespass, but the historical view. *See Bloomer v. Todd*, 3 Wash. Terr. 599, 615, 19 P. 135 (1888) ("The ordinary use of words at the time when used, and the meaning adopted at that time, is usually the best guide for ascertaining legislative intent.").

¶13 When the timber trespass statute was enacted, trespass[6] was classified into "two sorts:"[7] trespass on the case and trespass *vi et armis*. VI THE LAW-DICTIONARY 288 (1811). Trespass on the case was an act that was not immediately injurious or a culpable omission. *See, e.g., Stenberg v. Pac. Power & Light Co.*, 104 Wn.2d 710, 715, 709 P.2d 793 (1985). The plaintiff's resulting injury was indirect—consequential or collateral. *Id.* at 716. Trespass *vi et armis*, most often referred to as simply trespass, was "[a]ny unlawful act committed with violence, actual or implied, to the person, property, or rights of another." 2 JUDGE BOUVIER'S LAW DICTIONARY 608 (12th ed. 1867). Trespass was also described as a "direct trespass"—an act " 'done which is in itself an *immediate* injury to another's person or property.' " *Welch v. Seattle & Mont. R.R.*, 56 Wash. 97, 99, 105 P. 166 (1909) (quoting 3 BLACKSTONE COMMENTARIES 123 (Lewis' ed. 1902)). The plaintiff's resulting injury was " 'immediate, and not consequential.' " *Suter*, 35 Wash. at 7 (quoting *Roundtree v. Brantley*, 34 Ala. 544, 554 (1859)).

---

[6] "The writ of trespass was the original writ most commonly resorted to as a precedent." 1 JUDGE BOUVIER'S LAW DICTIONARY 243 (12th ed. 1867). It originally supposed "a wrong to be done with force." VI THE LAW-DICTIONARY 288 (1811). But "in process of time," trespass was "extended as to include every species of wrong causing an injury . . . apparently for the purpose of enabling an action on the case to be brought in the King's Bench." 1 BOUVIER'S, *supra*, at 243. Trespass was then used to signify "[a]ny misfeasance or act of one man whereby another is injuriously treated or damnified." 2 BOUVIER'S, *supra*, at 608.

[7] There were only two sorts, but there were many forms. For example, trespass against realty, or trespass *quare clausum fregit*, was used "to recover damages for injuries to the realty consequent upon entry without right upon the plaintiff's land." 2 BOUVIER'S, *supra*, at 610. Such trespass was done "*by breaking the close.*" *Id.* at 609. But this type of limited trespass was clearly not intended here because the legislature used the phrase "such trespasses" to refer to the verbs "cut down, girdle or otherwise injure, or carry off." Former RCW 64.12.030.

¶14 Because case and trespass actions triggered different statutes of limitations,[8] the direct/indirect distinction was often litigated. S*ee, e.g., id.* (" 'It is argued that trespass is a comprehensive term, which includes trespass on the case; and that this cause of action is a trespass on the case to real or personal property, which is embraced in the section under the term "trespass." ' " (quoting *Roundtree*, 34 Ala. at 554)). Over time, "trespass on the case" "lost the peculiar character of a technical trespass." 1 BOUVIER'S, *supra*, at 243. "[T]he name was to a great extent dropped, and actions of this character came to be known as actions on the case." *Id.*

¶15 Applying these principles here, the territorial legislature might conceivably have used the term "trespass" to mean any misfeasance that results in injury to a plaintiff's trees. But based on the common understanding of the term "trespass" in 1869, it seems more likely that the legislature used the term "trespass" to mean direct acts causing immediate injuries, not culpable omissions causing collateral damage. *See* 2 BOUVIER'S, *supra*, at 609 (The term "trespass" was "used oftener" in a restricted signification.); *see also Rayonier, Inc. v. Polson*, 400 F.2d 909, 918 n.11 (9th Cir. 1968) (The "legislature clearly had particular evils in mind when it enacted the treble damage statute.").[9]

---

[8] Trespass *vi et armis* triggered the three-year statute of limitations, while trespass on the case triggered the two-year "catchall" statute of limitations. *Stenberg*, 104 Wn.2d at 716. For example, the defendant in *Suter* owned and operated an irrigation canal near the plaintiffs' property in Chelan County. Waters overflowed the canal and washed over the plaintiffs' land, cutting deep and wide ditches. Because the plaintiffs did not file their complaint until after the two-year statute of limitations had run, the issue was whether the defendant was potentially liable in trespass on the case. We applied the two-year statute of limitations, holding that the damage was consequential and no trespass. We later eliminated the direct/indirect distinction in *Stenberg* to "return to the original understanding" of the statutes of limitations. 104 Wn.2d at 721.

[9] We also note that the timber trespass sounds in tort and trespass is an intentional tort. *Birchler*, 133 Wn.2d at 115 (citing *Tacoma Mill Co. v. Perry*, 40 Wash. 44, 47, 82 P. 140 (1905)). Contrary to the dissent's argument, the legislature's use of the phrase "casual [and] involuntary" does not transform an action for trespass into an action for negligence. RCW 64.12.040. An act is involuntary when it "is performed with constraint (*q.v.*), or with repugnance, or without the will to

¶16 The legislature's use of verbs also suggests that the statute applies to direct acts that cause immediate injury, not consequential damage. "Cut" means "to make a gash, incision, or notch" in "any body by an edged instrument, either by striking, as with an ax, or by sawing or rubbing."[10] An American Dictionary of the English Language 295 (1853). "Girdle" means "to make a circular incision, like a belt, through the bark and alburnum of a tree, to kill it." *Id.* at 503. "Carry off" means "to remove to a distance." *Id.* at 177. Because these verbs describe direct acts, which formerly would have been characterized as trespass *vi et armis*, we cannot conclude that the legislature intended the statute to penalize indirect acts or omissions, particularly in light of the treble damages provision.

## 2. *The fire act*

¶17 Because a statute's plain meaning may also be determined from related statutes, BNSF contends that the fire act, RCW 4.24.040-.060, is relevant to our analysis. According to BNSF, the fire act precludes application of the timber trespass statute to negligently set fires.

¶18 The fire act was originally enacted in 1877 and is now codified as RCW 4.24.040-.060. It creates a cause of "action on the case" against a defendant who permits a fire to spread and damage a plaintiff's property. *See* Laws of Wash. Terr. 1877, § 3 at 300; Code of 1881, § 1226; Rem. Rev.

---

do it. An action is involuntary, then, which is performed under duress." 1 Bouvier's, *supra*, at 747. An "involuntary trespass" is not negligence; it is still a trespass. *Hawley v. Sharley*, 40 Wn.2d 47, 50, 240 P.2d 557 (1952). An act is "casual" when it "happens accidentally, or is brought about by causes unknown; fortuitous; the result of chance." Black's Law Dictionary 178 (1891). An accidental trespass is also not negligence; it is still a trespass. *Rogers v. Kangley Timber Co.*, 74 Wash. 48, 54, 132 P. 731 (1913). And an "[a]ccident may in some cases excuse a trespass." 2 Bouvier's, *supra*, at 609. This appears to be the intent of the legislature; by creating RCW 64.12.040 as a mitigation provision, it permitted defendants to argue that their trespasses were involuntary, accidental, or accomplished under a mistaken belief of ownership.

[10] "[W]hen an entire separation of the body is intended, it is usually followed by ... *down* ... or other word denoting such severance." An American Dictionary of the English Language 295 (1853).

Stat. § 5647. The fire act applies when a defendant "for any lawful purpose kindle[s] a fire upon his or her own land" but fails to take "such care of it to prevent it from spreading and doing damage to other persons' property." RCW 4.24-.040. The fire act also expressly preserves "[t]he common law right to an action for damages done by fires." RCW 4.24.060. Both the statutory claim under RCW 4.24.040 (for fires kindled "for any lawful purpose") and the common law claim preserved by RCW 4.24.060 (for "damages done by fires") allow only the recovery of single compensatory damages.

¶19 But the fire act is only marginally helpful to our analysis. The territorial legislature could not have enacted the timber trespass statute in light of the fire act because the timber trespass statute predates the fire act. Further, the fire act does not apply in this case.[11] However, in a broad sense, the fire act does demonstrate that the legislature intended to impose liability for only single compensatory damages when property is destroyed by fire. *See, e.g., N. Bend Lumber Co. v. Chi., M.&P.S. Ry.*, 76 Wash. 232, 234, 135 P. 1017 (1913) (jury properly instructed as to fire act after a fire intentionally started on a railroad company's right of way, spread to plaintiff's property, and destroyed plaintiff's timber); *Burnett v. Newcomb*, 126 Wash. 192, 217 P. 1017 (1923) (fire act imposes liability where defendant starts a fire to destroy weeds on his property but negligently allows fire to spread and damage plaintiff's merchantable timber). It also demonstrates that the legislature intended fire damage to be recoverable through an "action on the case," rather than through a

---

[11] *See Jordan v. Welch*, 61 Wash. 569, 112 P. 656 (1911). The *Jordan* defendant, a railway company, negligently permitted its engine to ignite a fire that spread and damaged the plaintiff's property. *Id.* at 570. The action was not within the terms of the fire act because the defendant did not purposely kindle the fire. *Id.* at 573.

direct trespass action.[12] It also demonstrates that Jonge-ward may sue BNSF under the common law.

¶20 The plain meaning of the timber trespass statute cannot be dispositively determined from the text of the statute or the fire act. The phrase "otherwise injure" could conceivably be read to encompass the defendant's failure to prevent the spread of a fire. But the legislature's use of the word "trespass," as understood at the time, strongly suggests that the legislature intended to punish only direct trespasses causing immediate injury, not culpable omissions causing collateral damage. And while the fire act suggests that the legislature intended to impose only single compensatory damages when property is damaged by fire, the fire act does not conclusively preclude application of the timber trespass statute to negligently set fires.

## B. Interpretative Aids

¶21 If a statute remains ambiguous after a plain meaning analysis, it is appropriate to resort to interpretive aids, including canons of construction and case law. *Campbell & Gwinn*, 146 Wn.2d at 12.

### 1. *Canons of construction*

¶22 The timber trespass "statute is penal in its nature, not merely remedial. As such it should be strictly construed."[13] *Bailey v. Hayden*, 65 Wash. 57, 61, 117 P. 720

---

[12] The legislature's decision to include the case language in the fire act does not demonstrate that the legislature purposely omitted the case language from the timber trespass statute. However, it does suggest that the legislature was aware of the direct/indirect distinction in the common law and knew how to use it to create statutory liability.

[13] The dissent improperly suggests that the statute is not penal "[w]hen only single damages are being imposed." Dissent at 618. But under the plain language of the statute, treble damages are *always* in play, because every defendant is potentially liable for treble damages. *See, e.g., Shiflett*, 66 Wn.2d at 464-65 ("It is clear that treble damages will be imposed upon trespassers cutting timber under RCW 64.12.030, unless those trespassing exculpate themselves under the provisions of RCW 64.12.040."). As noted above, the burden is on the defendant to show mitigating circumstances. *See, e.g., Hill*, 110 Wn. App. at 406 (" 'Defendant Cox

(1911); *accord Birchler*, 133 Wn.2d at 110; *Grays Harbor County v. Bay City Lumber Co.*, 47 Wn.2d 879, 886, 289 P.2d 975 (1955); *Gardner v. Lovegren*, 27 Wash. 356, 362, 67 P. 615 (1902). Although Jongeward urges us to "remain mindful of the purposes of the provision when engaging in such construction," a strict construction suggests that BNSF should not be subject to the severe penalty of treble damages without clear evidence that it violated the statute. Opening Br. of Pls. at 5.

¶23 Under the principle of noscitur a sociis, "a single word in a statute should not be read in isolation." *State v. Roggenkamp*, 153 Wn.2d 614, 623, 106 P.3d 196 (2005). Instead, " 'the meaning of words may be indicated or controlled by those with which they are associated.' " *Id.* (internal quotation marks omitted) (quoting *State v. Jackson*, 137 Wn.2d 712, 729, 976 P.2d 1229 (1999)). The statutory phrase "otherwise injure" must therefore be read in conjunction with the other verbs—cut down, girdle, and carry off. Because each of these verbs connotes direct action, this canon suggests that the timber trespass statute does not apply when a defendant fails to prevent the spread of a fire.

¶24 Further, a court must not interpret a statute in any way that renders any portion meaningless or superfluous. *Svendsen v. Stock*, 143 Wn.2d 546, 555, 23 P.3d 455 (2001). Although Jongeward contends that a narrow reading of the statute would strip all commonsense meaning from the phrase "otherwise injure," the phrase has a separate meaning if it encompasses acts that are similar to the word "girdle," such as spiking or poisoning. Further, if the legislature used the phrase "otherwise injure" to encompass every conceivable act or omission that collaterally injures trees, the terms "cut down," "girdle," and "carry off" would have no separate meaning and would be rendered superfluous.

has failed to bring himself within the mitigation provision of the state timber trespass statute, RCW 64.12.040.' " (quoting Clerk's Papers at 692)). Because a plaintiff may not bring an action directly under RCW 64.12.040, the statute cannot reasonably be divided into a penal portion and a remedial portion.

¶25 Finally, "we employ traditional rules of grammar in discerning the plain language of the statute." *State v. Bunker*, 169 Wn.2d 571, 578, 238 P.3d 487 (2010). According to Jongeward, the 2009 punctuation change is further evidence that the legislature intended the phrase "otherwise injure" to serve as a separate and distinct category of wrongful action.

¶26 But Jongeward finds significance where none exists. First, the 2009 grammatical change makes the statute consistent with the Washington Code Reviser's style manual, which requires a comma to be inserted between each item in a series of three or more words (except the last). STATUTE LAW COMM., OFFICE OF THE CODE REVISER, BILL DRAFTING GUIDE 2011, pt. IV(1)(a)(i), *available at* http://www.leg.wa.gov/ CodeReviser/ Pages/bill_drafting_guide.aspx#part4.

¶27 Further, despite the omission of a comma in the 1869 and 1877 enactments, the 1932 compilation of Remington Revised Statutes included a comma between the words "girdle, or otherwise injure," and we have quoted the language as it now appears in cases both before and after the 1932 codification. *See Mullally v. Parks*, 29 Wn.2d 899, 908-09, 190 P.2d 107 (1948); *Simons v. Wilson*, 61 Wash. 574, 112 P. 653 (1911). So while we sometimes express a "high regard for the lowly comma," *Peters v. Watson Co.*, 40 Wn.2d 121, 123, 241 P.2d 441 (1952), the insertion of a comma in the 2009 statute is of no import here, particularly because the purpose of the amendment was to clarify that the statute applies to Christmas tree theft.

### 2. *Case law*

¶28 If a statute remains ambiguous after a plain meaning analysis, it is also appropriate to refer to relevant case law. *Campbell & Gwinn*, 146 Wn.2d at 12. Jongeward correctly cites two cases for the proposition that the timber

trespass statute applies to the destruction of ornamental trees: *Nystrand v. O'Malley*, 60 Wn.2d 792, 375 P.2d 863 (1962); *Tronsrud v. Puget Sound Traction, Light & Power Co.*, 91 Wash. 660, 158 P. 348 (1916). However, Jongeward does not (and cannot) cite a single Washington case where a court has applied the timber trespass statute when a defendant has failed to prevent the spread of a fire.

¶29 In each of our cases construing the statute over the last 142 years, the defendant entered the plaintiff's property and committed a direct trespass against the plaintiff's timber, trees, or shrubs, causing immediate, not collateral, injury. Examples include *Birchler*, 133 Wn.2d at 108, where the defendant encroached on plaintiffs' properties and removed trees and shrubbery; *Guay*, 62 Wn.2d at 474, where the defendants cut a swath on plaintiff's property, destroyed trees, brush and shrubs, and denuded the strip; *Mullally*, 29 Wn.2d 899, where the defendants entered a disputed area and destroyed trees; *Luedinghaus v. Pederson*, 100 Wash. 580, 171 P. 530 (1918), where the defendant trespassed upon plaintiff's land and removed standing timber; *Gardner*, 27 Wash. at 358, where the defendants entered plaintiff's land, cut down and converted into shingle bolts and removed plaintiff's cedar trees; *Maier v. Giske*, 154 Wn. App. 6, 21, 223 P.3d 1265 (2010), where the defendant entered a disputed area and destroyed trees and plants. These cases strongly suggest that the timber trespass statute does not apply when a defendant negligently causes a fire that spreads and damages a neighbor's trees.

¶30 Further, Division Three of the Court of Appeals considered an analogous case and held that the plaintiffs could not bring a timber trespass claim for tree damage due to fungus because the statute did not contemplate an award of damages for canal seepage. *Seal v. Naches-Selah Irrigation Dist.*, 51 Wn. App. 1, 751 P.2d 873 (1988). In so holding, the court rejected the plaintiffs' claim that there was no distinction " 'between trees damaged by the trespass of an

individual with a chain saw, or by the trespass of a thing under a person's control.'" *Id.* at 4. The court refused to accept the plaintiff's argument that the girdling of a tree by a fungus was " 'as much a trespass as the girdling of a tree by a human hand.'" *Id.* Although Jongeward attempts to distinguish *Seal*, the reasoning in *Seal* provides persuasive authority that the timber trespass statute is not implicated by the defendant's conduct.

¶31 In sum, our canons suggest that the legislature used the phrase "otherwise injure" to describe direct trespasses that are comparable to cutting down, girdling, and carrying off, such as spiking or poisoning. Our cases demonstrate that the statute applies only when a defendant commits a direct trespass causing immediate injury to a plaintiff's trees, timber, or shrubs. Based on our canons and case law, we hold that a defendant who negligently causes a fire that spreads onto a plaintiff's property and destroys a plaintiff's trees does not "otherwise injure" the plaintiff's trees for the purposes of former RCW 64.12.030.[14] The plaintiff's remedy is limited to the common law.

¶32

> QUESTION NO. [2]: Can a Plaintiff recover damages under [former] RCW 64.12.030 for trees damaged or destroyed by a Defendant who has never been physically present on Plaintiff's property?

Certification at 3.

¶33 To answer this question, we must determine whether the timber trespass statute applies when a defendant commits a direct trespass that causes an immediate injury to a plaintiff's timber, tree, or shrub but does not physically trespass onto a plaintiff's land. BNSF contends that the statute applies only when a defendant physically trespasses onto a plaintiff's property because the acts of cutting down, girdling, and carrying off all require a defen-

---

[14] Our holding does not preclude recovery for involuntary trespass, only for indirect trespass causing consequential or collateral injury.

dant's physical presence on a plaintiff's property. BNSF's argument has some merit. Because a defendant must be physically present on a plaintiff's land to cut down, girdle, or carry off a plaintiff's trees, the text could be read to require physical trespass onto a plaintiff's land. Further, each of our cases involves a defendant who was physically present on the plaintiff's property, and the statute requires the damaged tree to be physically located "on the land of another person." Former RCW 64.12.030.

¶34 But statutory recovery for an unauthorized cutting of trees does not require proof that the wrongdoer was trespassing upon the plaintiff's land. *See Int'l Raceway, Inc. v. JDFJ Corp.*, 97 Wn. App. 1, 970 P.2d 343 (1999). Nothing in the plain language of the statute requires a defendant to be physically present on a plaintiff's land, and it is not difficult to imagine a circumstance in which a defendant trespasses against a plaintiff's trees without trespassing on a plaintiff's property. For example, "a person who stands at his or her fence line and intentionally sprays herbicide on a neighbor's trees" engages in conduct prohibited by the statute because the person commits a direct trespass and causes immediate injury to the plaintiff's trees. Opening Br. of Pls. at 14. It would thwart the clear purpose of the statute to allow that voluntary offender to escape the statute's reach. And as Jongeward points out,[15] it would also be absurd "if that same tortfeasor simply took one more step on to the victim's land, then the statute would apply." *Id.*

---

[15] Jongeward also cites cases not involving the timber trespass statute for the proposition that trespass does not require human entry onto a plaintiff's land: *Zimmer v. Stephenson*, 66 Wn.2d 477, 403 P.2d 343 (1965) (spark from defendant's tractor burned neighbor's wheat crop); *Bradley v. Am. Smelting & Ref. Co.*, 104 Wn.2d 677, 709 P.2d 782 (1985) (smelter's pollutants trespassed on neighbor's property). But these cases are inapposite. The question before us is not whether physical presence is required for trespass under the common law, but whether physical presence is required to trigger the timber trespass statute. Further, the statute does not supply a common law remedy, but supplements the common law. Although our analysis of the statutory term "trespass" is necessarily informed by the common law, we decline to conflate the two remedies.

¶35 Ultimately, the legislature enacted the timber trespass statute to deter specific conduct and punish a voluntary offender. *Guay*, 62 Wn.2d at 476. Statutory violations involve direct trespass to a tree, not trespass to the land on which the tree grows. Because it is at least possible for a defendant to commit a statutory timber trespass without entering a plaintiff's property, we hold that the timber trespass statute applies when a defendant commits a direct trespass that causes immediate, not collateral, injury to a plaintiff's timber, trees, or shrubs, even if the defendant is not physically present on a plaintiff's property.

¶36

QUESTION NO. 3: Must damages awarded under [former] RCW 64.12.030 be reasonable in relation to the value of the underlying real property?

Certification at 3.

¶37 Because the timber trespass statute does not apply in this case, the issue of damages is not properly before us. Under the principle of judicial restraint, we respectfully decline to answer the third certified question.

## III. CONCLUSION

¶38 When the timber trespass statute was enacted, the term " 'trespass' " had " 'a well ascertained and fixed meaning.' " *Suter*, 35 Wash. at 7 (quoting *Roundtree*, 34 Ala. at 554). It did not refer to indirect acts or culpable omissions causing collateral damage, but only to direct acts causing immediate injuries. *Id.* (" 'It would be a perversion of language to denominate an act, which produced a consequential injury to real or personal property, a trespass. It would be a perversion alike of the legal and common acceptation of the words.' " (quoting *Roundtree*, 34 Ala. at 554)). It therefore seems likely that the territorial legislature intended the term "trespass" to carry this restrictive meaning in the timber trespass statute. Further, our canons

and case law strongly suggest that the legislature intended the timber trespass statute to apply only when a defendant commits a direct trespass that immediately injures a plaintiff's trees. Therefore, we answer no to the first certified question; a defendant who causes a fire that spreads and damages trees on a plaintiff's property does not "otherwise injure" the plaintiff's trees for the purposes of the timber trespass statute. We answer yes to the second certified question; a plaintiff may recover from a defendant who commits a direct trespass against a plaintiff's trees, causing injury that is immediate and not consequential, even if the defendant has never been physically present on the plaintiff's property. And we respectfully decline to answer the third certified question. Because the timber trespass statute does not apply in this case, the question of damages is not properly before us.

MADSEN, C.J.; C. JOHNSON, OWENS, and J.M. JOHNSON, JJ.; and ALEXANDER, J. PRO TEM., concur.

¶39 WIGGINS, J. (dissenting) — I agree with the majority that the Jongewards (hereinafter referred to collectively as Jongeward) may be unable to recover treble damages. But our legislature enacted this timber trespass statute with more than treble damages in mind. Our timber trespass statute also creates a single damages remedy for plaintiffs whose trees have been damaged by apparently "casual or involuntary" trespass. Jongeward may be entitled to damages on these facts, so this case should be allowed to proceed. Instead of recognizing this potential remedy, the majority takes our timber trespass statute in a new direction, resurrecting a distinction from the English common law that neither party advocates, and that has no proper place in our timber trespass analysis. This approach unnecessarily limits the possibility that a plaintiff like Jongeward can obtain relief, defying the language of the statute, subverting its purpose, and placing us at odds with other

jurisdictions including Oregon, on whose statute ours is based. Jongeward might not recover treble damages here, but that should not prevent this case from going forward given the possibility of recovery for casual or involuntary trespass. I respectfully dissent.

I. The approach advocated by BNSF Railway Company would unnecessarily limit recovery for casual or involuntary trespass, contravening the plain language of our statute and placing us at odds with other jurisdictions

¶40 As the majority points out, our timber trespass scheme includes two statutes not just one, former RCW 64.12.030 (CODE OF 1881, § 602) and RCW 64.12.040. Subsection .030 is a basis for liability, while subsection .040 mitigates that liability in certain circumstances. At the time of the fire at issue in this case, former RCW 64.12.030 imposed treble damages on anyone who cut down, girdled or otherwise injured, or carried off a tree:

> Whenever any person shall cut down, girdle or otherwise injure, or carry off any tree, timber or shrub on the land of another person, or on the street or highway in front of any person's house, village, town or city lot, or cultivated grounds, or on the commons or public grounds of any village, town or city, or on the street or highway in front thereof, without lawful authority, in an action by such person, village, town or city against the persons committing such trespasses or any of them, if judgment be given for the plaintiff, it shall be given for treble the amount of damages claimed or assessed therefor, as the case may be.

While subsection .030 creates liability and imposes treble damages, subsection .040 provides that treble damages are not always appropriate and allows a plaintiff to recover single damages when harm to timber is caused by "casual or involuntary" trespass:

> If upon trial of such action it shall appear that the trespass was casual or involuntary, or that the defendant had probable cause

to believe that the land on which such trespass was committed was his own, or that of the person in whose service or by whose direction the act was done, or that such tree or timber was taken from uninclosed woodlands, for the purpose of repairing any public highway or bridge upon the land or adjoining it, judgment shall only be given for single damages.

RCW 64.12.040. Subsection .040 also allows single damages recovery when there is a mistaken belief of ownership. *Id.*

¶41 When interpreting our timber trespass scheme, we must look at both subsections .030 and .040. As the majority points out, we construe statutes in context, examining all that the legislature has said on the matter, including provisions in related statutes. Majority at 594 (quoting *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 11, 43 P.3d 4 (2002)). The majority criticizes Jongeward for focusing too narrowly on two words: " 'otherwise injure.' " Majority at 595. I agree that analysis of statutory language cannot be artificially limited to a few select words. But the majority commits the same error as Jongeward, limiting its analysis to one word, "trespass," and failing to account for the relationship between subsections .030 and .040.

¶42 As a result, the majority interprets subsection .030 in a way that undermines subsection .040. The majority holds that liability under subsection .030 must be a "trespass *vi et armis*," a "direct act[ ] causing immediate injur[y]." Majority at 596, 597. But it is a rare case that will involve direct action, comparable to cutting down or girdling, that is also casual or involuntary. The majority makes it extremely unlikely that any plaintiff will ever recover single damages, effectively reading those words out of the statute.

¶43 No other jurisdiction that we have found takes an approach anything like this. Nor is this approach advocated by the parties.[16] This statute and others like it have been

---

[16] Under RAP 12.1(a), we can decide cases only on the basis of issues set forth by the parties in their briefs. *See Ducote v. Dep't of Soc. & Health Servs.*, 167

litigated throughout the United States for over a century, and until now no court has ever superimposed upon a timber trespass statute the ancient common law distinction between trespass *vi et armis* and trespass on the case. The reason for this is simple: doing so virtually eliminates single damages recovery for casual or involuntary harm, which is plainly actionable under many of these statutes including our own.

¶44 More to the point, the majority's approach belies the statute's history. We borrowed our timber trespass statute from Oregon,[17] and Oregon borrowed its statute from the New York Field Code.[18] This is significant because neither Oregon nor New York bases its statutory analysis on the

Wn.2d 697, 701-02, 222 P.3d 785 (2009). If the majority wants to decide the case on the distinction between trespass *vi et armis* and trespass on the case, we should call for additional briefing as required by RAP 12.1(b).

[17] When Washington enacted its timber trespass statute, it was, word for word, identical to Oregon's. *Compare* LAWS OF WASH. TERR. 1869, ch. 48, §§ 556-557, at 143-44, *with* 1862 OR. LAWS §§ 335-336, at 88-89. Oregon has since revised its statute, although, crucially, the "casual or involuntary" language remains. *See* OR. REV. STAT. §§ 105.810, .815. Oregon's statute, as originally enacted, stated:

> SEC. 335. Whenever any person shall cut down, girdle or otherwise injure, or carry off, any tree, timber, or shrub on the land of another person, or on the street or highway, in front of any person's house, village, town or city lot, or cultivated grounds, or on the commons, or public grounds, of any village, town, or city, or on the street or highway in front thereof, without lawful authority, in an action by such person, village, town or city against the person committing such trespasses or any of them, if judgment be given for the plaintiff, it shall be given for treble the amount of damages claimed, or assessed therefor, as the case may be.
>
> SEC. 336. If upon the trial of such action, it shall appear that the trespass was casual or involuntary, or that the defendant had probable cause to believe that the land on which such trespass was committed, was his own, or that of the person in whose service, or by whose direction the act was done, or that such tree or timber was taken from uninclosed woodland, for the purpose of repairing any public highway or bridge, upon the land or adjoining it, judgment shall only be given for single damages.

[18] *Compare* 1862 OR. LAWS §§ 335-336, at 88-89, *with* former N.Y. CODE CIV. PROC. §§ 911-912 (1850); *see also Matanuska Elec. Ass'n v. Weissler*, 723 P.2d 600, 606-07 (Alaska 1986). The New York Field Code states:

> § 911. Every person who cuts down, or carries off, any wood or underwood, tree or timber, or girdles or otherwise injures any tree, timber or shrub on the land of another person, or on the street or highway, in front of any person's house, village or city lot, or cultivated grounds, or on the commons, or public grounds, of any city or town, or on the street or highway, in front thereof,

distinction between trespass *vi et armis* and trespass on the case. Thus it is highly unlikely that our legislature, in borrowing those states' laws, somehow intended to create a law wholly unlike them yet completely identical in its text. I cannot take this illogical leap.

¶45 Not only is there no support for this ancient distinction in Oregon and New York law or our own case law, but three decades ago we abandoned the distinction between trespass *vi et armis* and trespass on the case in a statute of limitations case. In *Stenberg v. Pacific Power & Light Co.*, we called the distinction "fabricated," noting that it is " 'now rejected by most courts, and would appear to be slowly on its way to oblivion.' " 104 Wn.2d 710, 718-19, 709 P.2d 793 (1985) (internal quotation marks omitted) (quoting *Zimmer v. Stephenson*, 66 Wn.2d 477, 482-83, 403 P.2d 343 (1965)). The distinction has been banished from our cases and discredited, and yet the majority would resurrect it now in a completely new context in which it has never been previously applied. We have no clear indication that our territorial legislature had this distinction in mind or that it was doing anything more than borrowing a useful statute from Oregon. Absent more compelling evidence of legislative intent, I would adhere to our more recent precedent abandoning the distinction.

¶46 The majority approach would effectively limit single damages recovery to the mistaken belief of ownership defense. *See* RCW 64.12.040. We should not equate casual

---

without lawful authority, is liable to the owner of such land, or to such city or town, for treble the amount of damages, which may be assessed therefor, in a civil action, in any court having jurisdiction, except as provided in the next section.

The cases to which a penalty is attached for wilful trespass, extended so as to include ornamental trees in the streets.

§ 912. If, upon the trial of such action, it appear, that the trespass was causal or involuntary, or that the defendant had probable cause to believe, that the land, on which the trespass was committed, was his own, or that of the person in whose service, or by whose direction, the act was done, judgment must be given for only the single damages assessed in the action.

Former N.Y. CODE CIV. PROC. §§ 911-912.

or involuntary action with action taken under a mistaken belief of ownership. The legislature chose to include in the statute both "casual or involuntary" *and* the mistake of ownership defense, and we must assume that in using different words, the legislature meant to indicate different things. *In re Pers. Restraint of Dalluge*, 162 Wn.2d 814, 820, 177 P.3d 675 (2008) (Sanders, J., dissenting) ("When the legislature uses different words in the same statute, we presume the legislature intends those words to have different meanings."). Moreover, as discussed below, this interpretation is contrary to every other jurisdiction that has interpreted casual or involuntary as meaning accidental or negligent.

¶47 In ruling out liability for casual or involuntary trespass, the majority unnecessarily limits single damages liability for accidental, negligent, and involuntary conduct, placing us at odds with other jurisdictions with similar statutes. Equally troubling, the majority's approach contradicts Oregon, Alaska, and New York law. All have similar "casual or involuntary trespass" language. Thus, these states' interpretations are persuasive in interpreting our own statute. *See Green River Cmty. Coll. Dist. No. 10 v. Higher Educ. Pers. Bd.*, 107 Wn.2d 427, 432, 730 P.2d 653 (1986); *cf. State v. Carroll*, 81 Wn.2d 95, 109, 500 P.2d 115 (1972). Oregon has long interpreted the "[c]asual or involuntary" language in its comparable timber trespass statute as encompassing accidental, as well as "non-negligent, non-volitional trespass." *Wyatt v. Sweitz*, 146 Or. App. 723, 728, 934 P.2d 544 (1997); *Or. & Cal. R.R. v. Jackson*, 21 Or. 360, 367, 28 P. 74, 75-76 (1891) (where trespass is not willful but "casual or involuntary," single damages are appropriate). In *Wyatt*, the defendant was liable for casual or involuntary trespass after his truck slid off a roadway and damaged the plaintiff's trees. 146 Or. App. at 728. Likewise, in *Matanuska*, the Alaska Supreme Court drew the same conclusion, defining " 'casual' " as by " 'accident or negligence.' " *Matanuska Elec. Ass'n v. Weissler*, 723 P.2d 600,

607 (Alaska 1986) (quoting *Viall v. Carpenter*, 82 Mass. (16 Gray) 285, 286 (1860)). The court in *Matanuska* offered a few hypothetical examples of casual or involuntary trespass, including negligently swerving a bulldozer into trees and negligently igniting dynamite that harms trees.[19] *See also Yarnell v. Baldwin*, 130 Misc. 2d 653, 659, 497 N.Y.S.2d 268, 273 (1985) (defining "casual or involuntary" as accidental, not deliberate). Oregon, Alaska, and New York all allow timber trespass liability based on accidental, negligent, or involuntary action.

¶48 Other courts across the nation have interpreted similar language in much the same way. *See, e.g., Governale v. City of Owosso*, 59 Mich. App. 756, 760, 229 N.W.2d 918 (1975) (defining "[c]asual and involuntary" as "the opposite of deliberate and intentional"); *Pluntz v. Farmington Ford-Mercury, Inc.*, 470 N.W.2d 709, 711-12 (Minn. Ct. App. 1991) (defining " 'casual' " as " 'thoughtless or accidental or unintentional, . . . [h]appening or coming to pass without design, and without being forseen [sic] or expected; coming by chance, . . . unforseen [sic], unpremeditated . . . fortuitous' " (alterations in original) (quoting *Lawrenz v. Langford Elec. Co.*, 206 Minn. 315, 323, 288 N.W. 727 (1939))).

¶49 In stark contrast, the majority opinion places us at odds with these jurisdictions by requiring direct action and thereby eliminating liability for negligent, accidental, or involuntary conduct. In reaching this result, the majority relies on the fact that we have never before found a defendant liable for negligent action under the timber trespass act. Majority at 604. But that is precisely why the federal courts certified this question to us: because it is novel and unresolved. The majority's argument from silence proves too much; we have also never held that negligent action *does not* trigger liability under the statute. The majority reaches that result for the first time in this case,

---

[19] One can imagine many other kinds of unintended trespass or damage as well, such as a plane crash, a dam failure, pond water runoff, a tree or other structure falling across a property line, removal of lateral support, or snow buildup.

eliminating a form of liability that our statute plainly supports.

¶50 This strange result causes our timber trespass scheme to contradict itself. It does not make sense to recognize that a plaintiff can in theory recover for casual or involuntary trespass, and yet at the same time adhere to a direct action requirement virtually ensuring no plaintiff will ever recover for such trespass.

¶51 Instead, we must interpret subsections .030 and .040 harmoniously, so that neither renders the other superfluous. *G-P Gypsum Corp. v. Dep't of Revenue*, 169 Wn.2d 304, 309, 237 P.3d 256 (2010) (" 'Statutes must be interpreted and construed so that all the language used is given effect, with no portion rendered meaningless or superfluous.' " (internal quotation marks omitted) (quoting *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003))). BNSF, for its part, reaches an overt or directed action requirement only by misapplying the ejusdem generis canon and strict construction for penal statutes. We should decline BNSF's invitation to rely on these canons, instead recognizing that a plaintiff can recover single damages for casual or involuntary action under subsection .040.

II.  The majority sensibly rejects BNSF's ejusdem generis argument

¶52 The majority correctly rejects the critical flaw in BNSF's reasoning: a misplaced reliance on the ejusdem generis canon. Under the ejusdem generis rule, a general phrase in a statute that is used in conjunction with specific phrases should be interpreted to incorporate only things similar to the specific phrase. *See Simpson Inv. Co. v. Dep't of Revenue*, 141 Wn.2d 139, 151, 3 P.3d 741 (2000).

¶53 Fundamentally, the language of subsection .030 simply does not follow the pattern associated with ejusdem generis. That canon properly applies where there is a list of specific terms followed by a general term, i.e., "specific, specific, or general." *See Sw. Wash. Chapter, Nat'l Elec.*

*Contractors Ass'n v. Pierce County*, 100 Wn.2d 109, 116, 667 P.2d 1092 (1983). Here, we are interpreting language from former RCW 64.12.030, specifically the words "cut down, girdle or otherwise injure, or carry off."[20] This language creates three categories of culpable action: (1) cutting down trees, (2) girdling or otherwise injuring trees, and (3) carrying off trees. Properly read, the general phrase "otherwise injure" modifies only "girdle," not "cut down" or "carry off." Thus, the general phrase does not appear in a "specific, specific, or general" list as ejusdem generis requires. Rather, the pattern is "specific, specific or general, specific."

¶54 This is not just splitting hairs. The first phrase, "cut down," refers to harvesting the tree, which results in killing the tree but making it available for something useful such as lumber or firewood. The second phrase, "girdle or otherwise injure," refers to injuring the tree, not cutting it down. The third phrase, "carry off," refers to capturing or transporting the tree. In other words, each represents a separate category of culpable action. Read this way, it is evident from the structure of the sentence that "or otherwise injure" modifies only the "girdle" category, not "cutting down" or "carrying off," or even a general category encompassing all three. We are left with a specific way of injuring a tree—girdling—followed by an expansive general term—"or otherwise injure." This is simply not the "specific, specific, or general" pattern to which the ejusdem generis rule applies.

¶55 Instead, it appears that the legislature, in using the phrase "otherwise injure" to modify "girdle," intended to allow liability for all kinds of injuries to trees, not simply girdling. This reading is consistent with subsection .040, which allows liability for casual or involuntary trespass that is not necessarily direct in the sense of trespass *vi et armis*.

---

[20] The statute was amended in 2009, and there is now a comma between "girdle" and "or otherwise injure." *See* majority at 593. As the majority makes clear, this addition does not affect this case. *See* majority at 603-04.

¶56 This reading ensures that "otherwise injure" does not render other terms in the statute superfluous as the majority suggests. *See* majority at 601. Since "otherwise injure" is associated only with "girdle," the terms "cut down" and "carry off" retain independent meaning. The fact that "girdle" is included as an example of a specific type of injury does not make the term superfluous.

¶57 This reading of the statute is more consistent with the entire statutory scheme, and under this reading the ejusdem generis canon is not applicable.

¶58 But even if one accepts BNSF's flawed reading of the statute, the ejusdem generis rule still does not apply. This court is in agreement with our federal courts that the ejusdem generis rule has no application if there is a clearly manifested legislative intent that the general term be given a broader meaning than the doctrine requires. *Silverstreak, Inc. v. Dep't of Labor & Indus.*, 159 Wn.2d 868, 883, 154 P.3d 891 (2007); *United States v. Baranski*, 484 F.2d 556, 567 (7th Cir. 1973).

¶59 Here, there *is* such a clearly manifested legislative intent. It is plain that the legislature intended "otherwise injure" to encompass more than simply trespass *vi et armis* because subsection .040 allows a plaintiff to recover for casual or involuntary trespass. RCW 64.12.040. As discussed above, direct action will almost never be casual or involuntary.[21] Thus, application of ejusdem generis contravenes a clearly manifested legislative intent by restricting the casual or involuntary language out of existence. In this situation, ejusdem generis should not be part of our analysis. *Silverstreak*, 159 Wn.2d at 883; *Baranski*, 484 F.2d at 567.

¶60 Even assuming there *is* no contrary legislative intent, BNSF's reliance on ejusdem generis is still misplaced.

---

[21] Again, casual or involuntary trespass cannot be limited to the mistaken belief of ownership defense. That defense is listed in the statute separately from casual or involuntary trespass, and moreover, as discussed above, Oregon and most other jurisdictions define casual or involuntary to include negligent or accidental trespass.

It does not make sense to apply the rule where a general phrase is modified by "otherwise." The word "otherwise" means "different" or "in a different way or manner." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1598 (2002). This alone manifests a legislative intent not to limit the general phrase to things comparable to the specific phrases, and other courts have refused to apply ejusdem generis to "otherwise" phrases for this very reason. *City of Toledo v. Beazer Materials & Servs., Inc.*, 912 F. Supp. 1051, 1069 n.4 (N.D. Ohio 1995), *rev'd on other grounds sub nom. City of Toledo v. Beazer E., Inc.*, *noted at* 103 F.3d 128, 1996 WL 683505, 1996 U.S. App. LEXIS 30858 (6th Cir. 1996); *People v. Reilly*, 255 A.D. 109, 110, 6 N.Y.S.2d 161 (1938), *aff'd*, 280 N.Y. 509, 19 N.E.2d 919 (1939). *But see Gibson v. Dep't of Licensing*, 54 Wn. App. 188, 192-93, 773 P.2d 110 (1989); *Northlake Concrete Prods., Inc. v. Wylie*, 34 Wn. App. 810, 813-14, 663 P.2d 1380 (1983). Indeed, under BNSF's reading, "otherwise" would mean "comparable to," not different. We should not accept an interpretation that so drastically alters the meaning of an unambiguous word. *Silverstreak*, 159 Wn.2d at 884 (noting that " '[o]therwise' " means " 'differently' " and that rules of statutory construction should not give it a contrary meaning (quoting SCRIBNER-BANTOM ENGLISH DICTIONARY 641 (1977))).

III.   When recovery is for single damages, the statute is not penal and should not be strictly construed

¶61  The majority rests its interpretation in part on the fact that former RCW 64.12.030 is penal because it imposes treble damages, citing *Bailey v. Hayden*, 65 Wash. 57, 61, 117 P. 720 (1911). Majority at 600-01. It is telling that *Bailey* is a treble damages case. When treble damages are imposed, the statute is indeed penal and should be strictly construed. *Bailey*, 65 Wash. at 61. But when the proper remedy is single damages, the statute compensates only the plaintiff and does not punish the defendant. *See Gardner v. Lovegren*, 27 Wash. 356, 362, 67 P. 615 (1902) (" 'When this

law gives single damages it has a single object, and that is to redress the injured party. But when the damages are to be trebled, the object is two-fold, namely: to redress the injury done, and also to punish the wrong-doer.' " (quoting *Wallace v. Finch*, 24 Mich. 255, 258, 1872 WL 5931, at *2, 1872 Mich. LEXIS 13, at *5)). When only single damages are being imposed, as in the case of a casual or involuntary trespass, the statute does not warrant strict construction because there is simply no penalty involved.

## CONCLUSION

¶62 There is not even a hint of language in our timber trespass statute suggesting that liability should turn on the outdated distinction between trespass *vi et armis* and trespass on the case. We should read the statute as it is written, declining to rely on BNSF's erroneous application of ejusdem generis or on strict construction for penal statutes. BNSF has done substantial harm to timber, and our legislature wrote former RCW 64.12.030 and RCW 64.12.040 to allow plaintiffs like Jongeward to argue that they are entitled to damages for harm that was caused in a casual or involuntary fashion.

¶63 I respectfully dissent.

CHAMBERS and STEPHENS, JJ., concur with WIGGINS, J.